Filed 4/9/13 Terri L. v. Gary S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| TERRI L., | D061533 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. DN121876) |
| GARY S., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Mass III, Judge. Affirmed.

In this contentious custody dispute, the family court determined appellant Terri L. failed to establish that her former husband, respondent Gary S., sexually abused their two minor sons Robert and Charles.[1] Although, after Terri reported her belief Gary had molested the children, the family court placed fairly strict conditions on Gary's custody

---

[1] In order to protect the identity of the minor children herein, we use fictitious names in place of their actual names.

and visitation, when the family court later determined Terri had failed to establish the occurrence of any molestation, the family court lifted the conditions.

On appeal, Terri argues she in fact established that her sons had been abused by their father and that, in any event, the family court had no power to order that custody return to the terms of the order in place at the time the abuse accusations arose. We affirm the family court's order.

The record here is in conflict. To their credit, the parties here agreed that neither child would be called as a witness and questioned in court about whether they had been abused. Instead, the parties presented the family court with videotapes of interviews of the boys conducted by child protective services (CPS) shortly after their mother reported they had been abused. In the videotapes, the boys give somewhat conflicting accounts of what occurred and describe behavior by the father that might be interpreted as inappropriate, but not sexual.

Both parents testified. For her part, Terri presented experts who, based on their review of the videotaped interviews and therapy two of them provided, concluded that inappropriate sexual behavior had occurred.

For his part, Gary relied on the testimony of the evaluator appointed by the court under the provisions of Evidence Code section 730. The evaluator testified that, based on interviews and testing he performed on Gary, and interviews with Terri, the children's therapists and a number of family members, he believed Gary could reunify with the children. Although the evaluator believed there were emotional issues Gary needed to

2

address, the evaluator was more concerned about Terri's failure to disclose to Gary or otherwise act on earlier reports of sexualized behavior between the children.

The family court reviewed the videotapes of the interviews and, given the behavior described in the tapes and conflicts in the boys' accounts, did not believe the videotapes were persuasive evidence sexual abuse had occurred. In light of its evaluation of the videotape and considering all the other evidence presented, the family court found Terri had not established that abuse occurred.

Where, as here, there is substantial evidence which supports a trial court's factual determinations, we may not disturb those findings, even if there is other conflicting evidence which would support a contrary conclusion. Thus, the trial court did not err in finding the record presented by Terri failed to show that abuse occurred.

The record on appeal presented by Terri does not include the family court's order setting forth the reunification plan in place at the time of its order finding that no abuse had occurred and reinstating its earlier custody order. Under well-established principles of appellate review we must, and do, presume the family court's later order conformed with and was contemplated by the order establishing the reunification plan. Thus, we find no abuse of discretion in that portion of the family court's order which reinstated the prior custody order.

3

FACTUAL AND PROCEDURAL BACKGROUND

A.  Initial Report and Interviews

Following their marriage, Terri and Gary resided in Colorado.  Robert was born in 1998, and Charles was born in 2000.  Divorce proceedings were commenced in Colorado in 2000, and an order dissolving the marriage was entered in 2000 in Colorado.  The family court here in California later obtained jurisdiction over the parties.

At some point in late 2006 or the earlier part of 2007, Terri's mother reported to her that she had seen Robert and Charles acting out sexually, including playing with each other's penises.  At some point in 2007, Terri herself observed what she believed was one of the boys kissing the other boy's genitals.  Terri told the boys not to engage in that behavior but did not report these incidents to Gary or take any other action.

In 2007, Terri and Gary lived in the same neighborhood in Carlsbad and shared legal and physical custody of their sons.  The children spent 50 percent of their time with each parent.

In December 2007, when Robert was nine and Charles was seven, they reported to Terri that Gary had touched their genital area over their clothes and that they had touched his genitals while showering.  In response to this report, Terri notified police and CPS.  Terri also obtained a temporary restraining order preventing any contact between Gary and the children.

Shortly thereafter, CPS conducted separate forensic interviews of each boy.  In his interview, Robert stated he was bothered because, in order to get Robert's attention, Gary

4

would rub Robert's stomach and crotch area outside of Robert's clothes. Robert told the interviewer that he told Gary to stop, but Gary did not stop.

Robert also reported that he had seen his younger brother Charles touch Gary's penis while Gary was in the shower. According to Robert, this had happened on multiple occasions. Robert conceded that, when he was younger, on at least one occasion he too had touched Gary's penis while Gary was in the shower. According to Robert, Gary reacted to both boys by telling them not to touch his penis. Robert stated that Gary did not touch his private spot in the shower.

Robert also reported that his father, his brother and he referred to their genitals as "schmooskys," a term Gary's mother used. According to Robert, he and his brother thought it was very funny and joked with their father about their "schmooskys."

Shortly after the interview, Catherine McLennan, the social worker who conducted the interview, reached the following conclusion about the information Robert provided: "CPS is involved and observed the interview. The mother verbalizes a desire to protect. The intent of the behavior as described is difficult to assess, it is clearly concerning."

In Charles's interview, also conducted by McLennan, Charles minimized his involvement with any touching but reported that Robert touches his father's penis in the shower a lot. According to Charles, he saw his brother put his hand in the shower and touch his father's penis and testicles. According to Charles, when Robert does that his father says, "don't do that" but, according to Charles, Robert does not listen to his father

5

and does it the next day.  When asked about kissing, Charles reported that he saw his brother give his father's private spot a "tiny kiss."

With respect to Charles's interview, McLennan reached virtually the same conclusion she had reached following Robert's interview:  "It is difficult to assess the intent of the contact but the history is concerning for inappropriate interaction at least."

B.  Reunification

In the year following the report, the parties engaged in therapy, counsel was appointed to represent the two boys and, following the recommendation of an evaluator appointed under Evidence Code section 730, a reunification plan was adopted by the family court.  Between 2009 and July 2011, when the order which is the subject of this appeal was entered, Gary and the boys had supervised therapeutic visits which progressed to unsupervised visits and eventually to unsupervised overnight visitation.  Once visitation with Gary resumed, no further incidents of inappropriate sexual behavior were reported by either of the boys, Terri, or the therapists treating the boys, and there was no other evidence that such behavior had occurred.

C.  Evidentiary Hearing

In July 2011, the family court conducted an evidentiary hearing on the merits of Terri's allegation that Gary had molested their sons.  The principal evidence presented was the videotapes of the 2007 interviews conducted by CPS.  Terri testified as to what the boys told her and the behavior she had observed.

6

In addition to the videotapes and her own testimony, Terri presented expert evidence from a psychologist, John Kachorek, who had reviewed the videotapes and the CPS report. He had also spoken to the therapist for Robert, Bruce Campbell, and the therapist for Charles, Corinna Gonzales. Kachorek did not interview Gary or the boys.

Based on his review of the tapes, the CPS reports and consultation with the children's therapists, Kachorek concluded that what the boys reported in their CPS interviews had occurred and that it amounted to sexual abuse. Both of the children's therapists also testified they believed what the children reported had occurred. Terri also presented testimony from the CPS social worker who conducted the interview and a second social worker who observed the interview. Both social workers concluded that the boys had been honest in reporting what occurred.

For his part, Gary presented testimony from the Evidence Code section 730 evaluator, Dr. Stephen Doyne. Doyne had conducted a fairly thorough study of the parties and prepared a four-step reunification plan, to which both Gary and Terri had stipulated. In particular, unlike Kachorek, Doyne had spent several hours interviewing both Gary and Terri and subjecting Gary to psychological testing. Doyne also met with and interviewed both children. Doyne noted that during therapy both boys had from time to time recanted what they had disclosed in the CPS interview and then recanted their recantations.

As a result of his interviews and testing, Doyne concluded Gary had no more than an average risk of engaging in antisocial behavior. Although Doyne was critical of Gary

7

for permitting the boys to make an ongoing joke about their "schmooskys," Doyne was more concerned about Terri's reaction to the sexualized behavior that had been reported to her earlier by her mother and that she herself had observed. Doyne thought this behavior was more serious than the behavior the boys reported to Terri in December 2007. He opined that she should have shared what she observed with Gary and that they should have addressed it in a more serious manner. Doyne also testified that he believed Terri had a hypervigilant personality.

John Baddour, the social worker who supervised Gary's visits during the reunification process, also testified. He testified that Gary acted appropriately at all times. Baddour did report that on one occasion Robert seemed apprehensive about using a public urinal in Gary's presence.

Gary testified on his own behalf and vehemently denied any sexually inappropriate behavior with his sons. He was not subject to cross-examination.

After hearing the evidence presented, the family court concluded Terri's case against Gary was primarily based on the CPS interviews. The family court concluded that the information Robert and Charles provided in the 2007 interviews warranted further investigation, but the interviews themselves did not establish that any sexual molestation had occurred. Because the family court found the interviews themselves unpersuasive, it was unpersuaded by Terri's experts' interpretation of them as proof that Gary had sexually abused his sons. Thus, as we indicated at the outset, the family court found Terri had not established Gary committed any act of sexual molestation. As we

8

also indicated, the family court reinstated the previous custody order under which the parents shared legal and physical custody.

Terri filed a timely notice of appeal. Although Terri filed an opening brief, Gary filed no respondent's brief.

DISCUSSION

I

In her principal argument on appeal, Terri contends that in light of the evidence she presented, the family court erred in failing to find that Gary had molested their children.

A. Standard of Review

As Terri recognizes, when, as here, a trier of fact has concluded that an appellant has failed to carry his or her burden of proof, we must determine "'whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."' [Citation.]" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466.) Contrary to Terri's contention, we may not engage in a de novo review of the videotaped interviews which played such a large role in the family court's determination in this case. The weight of any piece of evidence presented in a trial court is for the trial

9

court to determine, even if the evidence is in the form of a declaration, an affidavit, or as here, videotapes.  (See *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479.)

B.  Analysis

Our review of the videotaped CPS interviews supports the family court's conclusion that, by themselves, the interviews do not compel a finding that abuse occurred.  As the family court noted, in response to the most concerning behavior—the boys touching their father's penis in the shower—both boys reported that Gary told them not to do that.  The family court's appraisal in turn was consistent with the CPS interviewer's own conclusion at the time the interviews occurred:  While the information provided by Robert and Charles raised concerns, it was not possible, based on the interviews, to conclude that sexual abuse occurred.

The family court's further conclusion, that the other witnesses presented by Terri ultimately relied on the information provided in the videotapes, is also supported by our review of the record.  While Kachorek spoke with the children's therapists and Terri, and reviewed the CPS reports, he did not speak to the children or Gary; rather, Kachorek relied on the videotapes and the information provided by the therapists, who in turn, were clearly influenced by their own understanding as to what was disclosed in the CPS interviews.

The family court was not required to embrace Kachorek's conclusion that although both boys reported that Gary told them not to touch his penis, he continued to tolerate it and was thereby sending them the message it was appropriate.  Among other matters, the

10

family court was not required to ignore the boys' conflicting accounts of which one of them touched their father's penis and how many times they did so. Given those conflicting accounts, but the boys agreement that Gary told them not to touch him, the family court could reasonably conclude that any touching was not a regular behavior and was not implicitly tolerated by Gary.

The family court could also consider Doyne's conclusions that Gary had no more than an average risk of engaging in antisocial behavior and that Terri was hypervigilant. In addition, of course, the family court could also consider Gary's unequivocal denial that any inappropriate behavior occurred.

Thus, taking this conflicting record as a whole, there was plenty of room for the family court to determine Terri had not met her burden.

Contrary to Terri's argument, the family court could quite properly note in its statement of decision that the videotaped interviews were less than persuasive because they were not subject to cross-examination. The undeniable fact is the videotaped interviews did not permit Gary's counsel to cross-examine either boy and, in light of the boys' conflicting accounts, that fact in turn made the interviews less persuasive as evidence of sex abuse. The fact that earlier in the proceedings the family court admonished both parties as to the risks of calling the children to testify as live witnesses did not thereby endow the interviews with added credibility or require that the family court adopt Terri's definitive interpretation of the interviews.

11

The fact that the family court found Robert's therapist was not credible was not an abuse of its discretion. As the family court indicated, the record shows Robert's therapist assumed abuse had occurred and thereafter did not question Robert about any details of the abuse. The record also shows that, although ordered not to discuss the case with Charles's therapist, he did so regularly. Both of these circumstances undermine the credibility of the therapist's opinion with respect to whether abuse in fact occurred.

We also reject Terri's contention the trial court erred in failing to apply Evidence Code sections 412 and 413, which, respectively, permit a trier of fact to distrust evidence where other more persuasive evidence is available to a party (Evid. Code, § 412) and consider whether a party has responded to adverse evidence or suppressed evidence (Evid. Code, § 413). In particular, Terri contends Gary's testimony should have been rejected because he did not present evidence from a psychosexual examination performed in early 2007 and failed to discuss the boys repeated reference, in his presence, to their genitals as "schmooskys." The weight of any inferences to be drawn under Evidence Code sections 412 and 413 are matters for the trial court and are only of concern to us when there is no substantial evidence to support a judgment. (*Moore v. Spremo* (1945) 72 Cal.App.2d 324, 328-329.) Here, as we have discussed, there is more than sufficient evidence to support the family court's order.

In sum, the family court did not err in finding that Terri did not meet her burden of proof.

12

II

In her second argument on appeal, Terri argues that the family court erred in ordering that the custody order in place in December 2007 be reinstated. She contends that the family court should have conducted a further hearing to determine what was in the best interests of Robert and Charles.

Our difficulty with this argument is that, although the reporter's transcript and the family court's order make reference to the court's earlier four-step reunification plan, which evidently was successful, the order establishing the reunification plan is not in the record on appeal. It is axiomatic that on appeal, an appellant must present us with a complete record of pertinent proceedings in the trial court, and that where, as to such pertinent matters, the record is silent, we must presume that the trial court acted properly. (See *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) Given these circumstances, we must presume the family court adopted the four-step reunification plan as a means of protecting the best interests of Robert and Charles and that the family court's order reinstating the custody order in place in December 2007 was consistent with and contemplated by the order establishing the reunification plan. Thus, the record on appeal does not demonstrate any error on the part of the family court.

DISPOSITION

The order appealed from is affirmed.  Costs on appeal are awarded to respondent.


BENKE, Acting P. J.

WE CONCUR:


HUFFMAN, J.


IRION, J.