[No. H036190. Sixth Dist. Aug. 10, 2011.]

RICHARD FOUST, Plaintiff and Appellant, v.
SAN JOSE CONSTRUCTION COMPANY, INC., Defendant and
Respondent.

## COUNSEL

Law Offices of Robert E. Dunne and Robert E. Dunne for Plaintiff and Appellant.

McPharlin Sprinkles & Thomas, Linda Hendrix McPharlin, Paul S. Avilla and Anne C. Stromberg for Defendant and Respondent.

## OPINION

**PREMO, J.**—Richard Foust appeals from a judgment entered in favor of San Jose Construction Company, Inc. (San Jose Construction), following a three-day court trial on his claim that San Jose Construction breached a written employment contract. Foust argues that the trial court erred in finding that his written employment contract was subsequently modified. In preparing the record on appeal, Foust elected to proceed without a reporter's transcript and designated only a partial clerk's transcript.

San Jose Construction, in addition to arguing the merits of the case, has brought a separate motion for sanctions against Foust on the basis that the appeal is frivolous. (Cal. Rules of Court, rule 8.276(a).)

Foust's showing on appeal is insufficient and we shall affirm the judgment. We also find that the appeal is frivolous and award sanctions against Foust.

## I. *Factual and Procedural Background*

We take our recitation of the facts from the trial court's statement of decision.

In 1999, San Jose Construction hired Foust as a project manager pursuant to a written employment agreement (the letter agreement). The letter agreement provided for a base salary of $130,000 per year, a signing bonus, an annual bonus of $26,000 to be paid quarterly, as well as certain other benefits including car and cell phone allowances. It also provided for a performance bonus of 20 percent of all gross profits over $780,000 generated by Foust's projects.

On his first day of employment, Foust signed a copy of San Jose Construction's policy and procedure manual, which specified that his employment was "at will" and that San Jose Construction reserved the right to adjust salaries "on a selective merit basis."

In 1999, San Jose Construction paid Foust his salary and annual bonus as set forth in the letter agreement. No performance bonus was earned or paid. In the first half of 2000, Foust was paid his salary and two quarterly bonus payments of $6,500. After he received his second quarterly bonus payment, Foust's salary was increased from $130,000 to $160,000, but no further quarterly bonus payments were made that year.

In September and December of 2000, Foust prepared written outlines of his compensation for that year. Both outlines noted the increase in his salary, and reflected a different performance bonus formula from that set forth in the letter agreement. Foust testified that he prepared these outlines at the request of San Jose Construction's president, Pat DiManto,[1] and was told he would not receive a bonus if he did not do so. Foust testified that he did not know why his compensation had been changed, but "indicated that DiManto told him that 'he was going to make good on this' every couple of months so he was 'not concerned.' " Foust made no written complaint about his compensation and continued working at San Jose Construction.

In February 2001, Foust's salary was increased to $175,000 and his car and cell phone allowances were also increased. In the spring of 2001, DiManto

---

[1] According to the statement of decision, DiManto died prior to trial and, apparently, before Foust filed his action against San Jose Construction. As a result, there was no sworn testimony from DiManto introduced at trial.

had a lunch meeting with all of the San Jose Construction project managers. All of the witnesses agreed that performance bonuses were discussed at this meeting and DiManto indicated that all such bonuses would be paid on a 10 percent calculation going forward. According to Foust, he never accepted this change from the letter agreement, but just listened to what was said at the meeting.

In 2001 Foust received his $175,000 salary, no quarterly bonus payments and a 10 percent performance bonus. In December 2002, Foust prepared a written summary of his compensation for 2001 and 2002. This summary reflected Foust's $175,000 salary and the 10 percent performance bonus for both years. In addition, it showed Foust had been overpaid $17,000 in 2001, but that he was due a net bonus of $42,269 for 2002. Again, Foust testified that he was told that he should "write it up this way or he would get no bonus at all," and he was "not happy." Foust did not recall what DiManto said about his written summary of compensation for 2001 and 2002, but testified that DiManto had said "he would find a way to pay me."

In 2003, Foust's salary was reduced from $175,000 to $150,000. Foust testified he had "no idea" why it was done as no one had a discussion with him about his salary. "As to all of the changes in his compensation, Foust testified that he 'understood that this was the deal' but he didn't agree with it. He never put anything in writing objecting to the manner he was paid while working for [San Jose Construction] and did not make any claim for unpaid compensation until this lawsuit and after DiManto's death."

After first noting that "Foust's claim [of breach of contract] rests largely on his credibility," the trial court's statement of decision lists several examples of how Foust's trial testimony was not credible. The court found that the letter agreement was modified when Foust signed the policy and procedure manual that made him an at-will employee. Thereafter, San Jose Construction "unilaterally changed the terms of Foust's compensation, as it had the right to do for an at-will employee, first in 2000 and then in subsequent years and paid Foust consistent with those changes. Foust knew of these changes and accepted them by continuing to work at [San Jose Construction]. Therefore, there was no breach of his employment contract."

After judgment was entered in favor of San Jose Construction, Foust timely appealed.

II. *Discussion*

A. *The incomplete record is fatal to the appeal*

Foust argues that the letter agreement was never modified by a writing, there was no mutual assent given to any modification of the terms of that

agreement and no consideration was ever given to him in exchange for changing the terms of the agreement. According to Foust, his trial testimony was clear that he never agreed to any change in the terms of his compensation and he was repeatedly assured by DiManto that the letter agreement was valid. Foust contends that the trial court erred in finding that the letter agreement was modified when he signed San Jose Construction's policy and procedure manual.[2]

■ The fatal problem with this appeal is that Foust fails to provide us with a reporter's transcript from his court trial or any other adequate statement of the evidence. The record consists solely of a partial clerk's transcript which includes the following documents: Foust's initial complaint; his amended complaint; the statement of decision; the judgment; and two of the exhibits[3] introduced at trial. Generally, appellants in ordinary civil appeals must provide a reporter's transcript at their own expense. (*City of Rohnert Park v. Superior Court* (1983) 146 Cal.App.3d 420, 430–431 [193 Cal.Rptr. 33].) In lieu of a reporter's transcript, an appellant may submit an agreed or settled statement. (*Leslie v. Roe* (1974) 41 Cal.App.3d 104 [116 Cal.Rptr. 386]; Cal. Rules of Court, rules 8.134, 8.137.)

In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932] [attorney fee motion hearing]; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574–575 [224 Cal.Rptr. 664, 715 P.2d 624] (lead opn. of Grodin, J.) [new trial motion hearing]; *In re*

---

[2] In his reply brief, Foust notes that the policy and procedure manual states, in capital letters: "Under no circumstances does this policy and procedure manual, or the sections contained herein on termination or discipline, form a contract between the company and any of its employees. Rather it describes a general approach concerning decisions made by supervisory personnel in the workplace. The company recognizes that each termination or disciplinary situation represents a unique set of circumstances and therefore must be reviewed and decided on the individual facts and in the context of the surrounding circumstances." We decline to consider this argument, as it was raised for the first time in the reply brief. (*REO Broadcasting Consultants v. Martin* (1999) 69 Cal.App.4th 489, 500 [81 Cal.Rptr.2d 639].) Furthermore, without a more complete record of the proceedings below, we cannot know whether this argument was ever made before the trial court and thus preserved for appeal. As there is no mention of it in the trial court's statement of decision, we presume it was not raised below and the claim is therefore forfeited. (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486 [61 Cal.Rptr.2d 341].)

[3] The trial court's statement of decision includes citations to exhibit numbers, e.g., "(Ex #1)" which we presume are references to exhibits introduced at trial. A total of 13 unique exhibits, specifically Nos. 1–4, 11, 15–18, 101, 103, 105 and 107, are cited therein. Accordingly, the number of exhibits introduced at trial ranges anywhere from 13 to 107 (or more). Without a complete record, we have no way of knowing the true number, nor can we know what those exhibits contained or what Foust and the other witnesses may have had to say about their content.

*Kathy P.* (1979) 25 Cal.3d 91, 102 [157 Cal.Rptr. 874, 599 P.2d 65] [hearing to determine whether counsel was waived and the minor consented to informal adjudication]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 [94 Cal.Rptr.2d 143] [trial transcript when attorney fees sought]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [89 Cal.Rptr.2d 618] [surcharge hearing]; *Hodges v. Mark* (1996) 49 Cal.App.4th 651, 657 [56 Cal.Rptr.2d 700] [nonsuit motion where trial transcript not provided]; *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532 [254 Cal.Rptr. 492] [reporter's transcript fails to reflect content of special instructions]; *Buckhart v. San Francisco Residential Rent etc., Bd.* (1988) 197 Cal.App.3d 1032, 1036 [243 Cal.Rptr. 298] [hearing on Code Civ. Proc., § 1094.5 petition]; *Sui v. Landi* (1985) 163 Cal.App.3d 383, 385–386 [209 Cal.Rptr. 449] [motion to dissolve preliminary injunction hearing]; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 713–714 [152 Cal.Rptr. 65] [demurrer hearing]; *Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70, 71–73 [40 Cal.Rptr. 690] [transcript of argument to the jury]; *Ehman v. Moore* (1963) 221 Cal.App.2d 460, 462 [34 Cal.Rptr. 540] [failure to secure reporter's transcript of settled statement].)

The reason for this follows from the cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) "In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. '[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.' " (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127 [23 Cal.Rptr.2d 268].) This general principle of appellate practice is an aspect of the constitutional doctrine of reversible error. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610 [109 Cal.Rptr.2d 256].) " 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [122 Cal.Rptr.2d 167].) "Consequently, [appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant]." (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502 [93 Cal.Rptr.2d 97].)

 Foust's claim that the trial court's decision "is contrary to the law and contrary to the actions of the parties" cannot be resolved on an appeal utilizing only selected excerpts from the clerk's transcript. Without a reporter's transcript or the exhibits presented at trial we cannot undertake a meaningful review of Foust's argument on appeal. Foust contends that he never assented to a modification of the letter agreement, yet he provides nothing which might rebut the trial court's findings that he knew of the

changes to the terms of his employment, specifically the changes in his base salary and the calculation of his performance bonus, and accepted those changes by continuing in San Jose Construction's employ. Foust seems to want this court to reevaluate his credibility and reweigh the evidence presented below, but we can do neither. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 [108 Cal.Rptr.2d 34] [appellate court defers to trier of fact regarding credibility of witnesses]; *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 [85 Cal.Rptr.2d 386] [appellate court does not reweigh evidence].)

### B. *Sanctions for filing a frivolous appeal*

San Jose Construction has moved for sanctions for filing a frivolous appeal. (Cal. Rules of Court, rule 8.276(a); *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179] (*Flaherty*).) We ordered that the motion would be considered with the appeal and notified Foust that we were considering imposing sanctions. We also consider whether to impose sanctions payable to the court. Foust filed a brief arguing that sanctions are not warranted. (See Cal. Rules of Court, rule 8.276(c), (d).)

California Rules of Court, rule 8.276(a), gives the appellate court the authority to "impose sanctions . . . on a party . . . for: [¶] (1) Taking a frivolous appeal or appealing solely to cause delay . . . ." Code of Civil Procedure section 907 states that "[w]hen it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."

"[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Flaherty, supra*, 31 Cal.3d at p. 650.) Thus, we may impose sanctions either when an appeal indisputably has no merit, or when it is filed for an improper purpose. We conclude that sanctions are warranted because Foust's appeal is indisputably without merit. As shown by our discussion of the issues that Foust has raised, he has failed to present a colorable claim that the trial court erred. Foust challenged the sufficiency of the evidence following a three-day court trial during which oral and documentary evidence were presented, but elected to proceed without a reporter's transcript. Foust initially designated only his original complaint, the first amended complaint, the statement of decision, the judgment, and the notice of appeal for inclusion in the clerk's transcript. He subsequently augmented the clerk's transcript to

include two of the exhibits[4] admitted at the trial. The essence of Foust's appeal is that, based on these select documents and his self-serving assertion that he never agreed to modify the letter agreement, this court should reevaluate his credibility and find that no such modification took place. To do so, however, we would have to ignore the trial court's express finding that Foust acknowledged in writing—on more than one occasion—that his compensation package had changed, but he not only made no written protest to these changes, he accepted the compensation offered. Though Foust testified that he did not agree with these changes and was given no choice but to memorialize them in writing, the trial court expressly found that Foust's testimony was not credible. Without a proper record, there is no way for this court to find that the trial court's conclusions were not supported by substantial evidence.

■ Sanctions are also warranted because it appears that Foust has filed his appeal for the improper purpose of harassing San Jose Construction. As our Supreme Court has observed, the fact that an appeal is objectively without any merit is often an indication that the appellant filed it for an improper purpose. (See *Flaherty, supra*, 31 Cal.3d at p. 649 ["the total lack of merit of an appeal" is often "viewed as evidence that appellant must have intended it only for" improper purposes].) The clear lack of merit to Foust's appeal is one indication that he filed it simply to cause San Jose Construction to expend time and resources defending the judgment it obtained below.

■ San Jose Construction requests that we impose sanctions of $8,743 representing its attorney fees and costs in defending the appeal. Attorney fees are appropriate given that attorney fees are a common measure of sanctions payable to an opposing party and given the "degree of objective frivolousness" of Foust's appeal and "the need for discouragement of like conduct in the future." (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 34 [96 Cal.Rptr.2d 553].)

■ We also impose sanctions payable directly to the clerk of this court. "Because a frivolous appeal, or one taken for improper reasons, harms the court, not just the respondent, a growing number of courts are ordering appellants to pay sanctions directly to the court clerk to compensate the state for the cost of processing such appeals." (*Pierotti v. Torian, supra*, 81 Cal.App.4th at p. 35.) A 2008 case cites a cost analysis by the clerk's office for the Second Appellate District that estimated the cost of processing an appeal that results in an opinion by the court to be approximately $8,500. (*In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 520 [77 Cal.Rptr.3d 540]; see also *Huschke v. Slater* (2008) 168 Cal.App.4th 1153,

---

[4] As discussed in footnote 3, *ante*, we do not know how many exhibits in total were introduced at trial—it could have been as few as 13 or more than 100.

1163–1164 [86 Cal.Rptr.3d 187] [relying on that cost analysis to set amount of sanctions payable to the court].) Because we recognize the legal issues involved in this appeal are not at all complex, we conclude that a sanction of $6,000 is appropriate to reimburse the state for the costs of this appeal.

III. *Disposition*

The judgment is affirmed. Foust shall pay $8,743 to San Jose Construction and $6,000 to the clerk of this court as sanctions for bringing this frivolous appeal. All sanctions shall be paid no later than 30 days after the date the remittitur is filed. San Jose Construction shall recover its costs on appeal.

Rushing, P. J., and Elia, J., concurred.