Filed 12/26/13  Marriage of Lockington CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of TRICIA K. and JAMES E. LOCKINGTON. | |
| TRICIA K. LOCKINGTON, | G047832 |
| Respondent, | (Super. Ct. No. 04D004637) |
| v. | O P I N I O N |
| JAMES E. LOCKINGTON, | |
| Appellant. | |

Appeal from an order of the Superior Court of Orange County, Ronald P. Kreber, Judge.  Affirmed.

James E. Lockington, in pro. per., for Appellant.

No appearance for Respondent.

\*          \*          \*

Appellant James E. Lockington appeals from a trial court order granting his application to modify his monthly child support obligations, granting respondent Tricia K. Lockington's application for reimbursement of additional child support expenses, and granting Tricia's application to modify legal custody.[1]  As explained below, we affirm the court's order because James's failure to provide a complete record of the three-day hearing on these applications requires us to presume the evidence presented at that hearing supported the court's ruling and James does not identify any legal error that appears on the face of the appellate record.

I

FACTS AND PROCEDURAL HISTORY

James and Tricia married in 1991.  They have two daughters, one born in 1998 and other in 2000.  Tricia filed for divorce in May 2004 and the trial court entered a stipulated judgment dissolving the marriage in December 2006.

The judgment awarded the couple joint legal custody and Tricia primary physical custody with a 70/30 percent timesharing arrangement.  The judgment ordered James to pay approximately $2,000 per month in child support based on his and Tricia's then current incomes, and also ordered James and Tricia to share equally in (1) the children's uninsured health, dental, hospital, and orthodontic expenses; (2) "all day care expenses incurred in connection with employment"; and (3) "any mutually agreed upon in writing activities, tuition and expenses, including but not limited to fees, tuitions, room and board, travel costs, extracurricular activities, lessons, college standard test preparatory classes, student driver's education class, sports, summer camp and tutoring."  Finally, the judgment required James and Tricia to maintain the children on any

[1]     For clarity, "we refer to the parties by their first names, as a convenience to the reader.  We do not intend this informality to reflect a lack of respect.  [Citation.]" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1513, fn. 2.)

2

employment-related group health or dental insurance at their own expense, and obtain written consent of the other parent or a court order before beginning "any extended course of medical, dental, orthodontic, psychiatric or psychological treatment/counseling" for either child.

In May 2009, James and Tricia stipulated to temporarily grant Tricia sole legal custody of the children and limit James to eight hours of supervised visitation every other weekend while he sought treatment for a pornography addiction. The parties agreed to resume joint legal custody once James completed his treatment and his doctors eliminated the monitored visitation requirement.

A year later, James and Tricia entered into a second stipulation acknowledging James had made significant progress in his treatment and restoring joint legal custody, although the agreement also provided "[Tricia] shall continue to make all of the decisions related to medical, dental, educational, psychological and extracurricular activities for the children." In addition, this stipulation required James to continue both his treatment and monitored visitations, but stated "[i]t is the ultimate goal that [James's] custodial rights and time, as designated in the Judgment filed December 11, 2006, shall eventually be reinstated, without any requirement of monitoring." James contends the appointed parenting coordinator removed all visitation monitoring requirements in December 2010 and therefore all legal rights associated with his joint legal custody of the children were restored as of that date, including his right to participate in decisions regarding the children's medical, dental, educational, psychological, and extracurricular activities.

In April 2010, James filed an order to show cause asking the trial court to reduce his monthly child support payments because he lost his job and exhausted his financial resources by paying more than $100,000 in treatment expenses to address his pornography addiction and attorney fees incurred in the related custody dispute. The court denied James's request in August 2010, and he timely appealed. In

December 2011, we issued an unpublished opinion reversing the court's decision and remanding the matter for further proceedings because the court applied improper legal standards in denying James's request to reduce his child support payments. (*In re Marriage of Lockington* (Dec. 29, 2011, G044066) [nonpub. opn.].)

On remand, James and Tricia filed supplemental papers regarding James's request to reduce his monthly child support payments and whether to apply any reduction retroactively. These filings showed James had found full-time employment by December 2011 and was making more than $10,000 per month. Tricia also filed two applications with the trial court. The first sought an order compelling James to pay Tricia approximately $16,000 for his one-half share of various medical, dental, orthodontic, day care, and extracurricular activity expenses Tricia incurred for the children between March 2010 and February 2012. Her second application sought an order granting Tricia sole legal custody for both children because James purportedly interfered with Tricia's exclusive right to obtain orthodontic and other necessary care for the children and failed to follow several earlier court orders in this action.

During July 2012, the trial court conducted a three-day hearing on James's request to modify child support and Tricia's requests for reimbursement and sole legal custody. Both James and Tricia testified during the hearing. In September 2012, the court conducted a separate hearing to announce its tentative decision granting James's request to modify child support, granting Tricia's reimbursement request in the full amount, and granting Tricia's request to modify custody by awarding her both sole legal and sole physical custody. The court directed James and Tricia to file any objections to the tentative ruling within 10 days. James filed lengthy written objections to the court's tentative ruling, rearguing much of the evidence presented during the three-day hearing and asking the court for detailed written rulings on his objections to Tricia's reimbursement claim.

4

In November 2012, the trial court issued a minute order responding to James's objections and modifying its tentative decision in a few respects. The court granted James's request to modify his monthly child support payments, reduced the monthly payments to approximately $1,000 effective August 1, 2012, and by comparing his actual income to the amount imposed by the statutory formula, found James had overpaid his child support obligations by $5,832 for the period April 1, 2010, to July 31, 2012.

The court granted Tricia's reimbursement request except the premiums Tricia paid to maintain the children on her employer's health insurance. After reducing the amount requested by those premiums and crediting James for the amount he overpaid in child support, the court ordered James to pay nearly $6,900 to reimburse Tricia for the various medical, dental, orthodontic, day care, and extracurricular activity expenses she incurred for the children. The court explained that it reviewed each of the items for which Tricia sought reimbursement, found each of them (except the health insurance premiums) to be appropriate, and rejected James's objections that Tricia failed to adequately document the expenses.

The court also granted Tricia sole legal custody, but left physical custody unchanged. The court explained it granted the request because (1) although James completed many of the treatment obligations he agreed to undertake in earlier stipulations, he had not completed all of them; (2) the longstanding inability of James and Tricia to reach agreement on decisions regarding the children required one decision maker for all matters; and (3) Tricia previously had been granted sole decisionmaking authority regarding the children's medical, dental, child care, and extracurricular activities. Finally, the trial court awarded Tricia $2,200 in attorney fees. James timely appealed.

II

DISCUSSION

A.      *James's Burden to Provide an Adequate Record and Affirmatively Establish Trial Court Error*

"A fundamental principle of appellate law is the judgment or order of the lower court is presumed correct and the appellant must affirmatively show error by an adequate record." (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178.) "'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented."' [Citation.]" (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 (*Foust*).)

"It is the burden of the party challenging a judgment on appeal to provide an adequate record to assess error." (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324 (*Nielsen*).) Here, James provided an appellant's appendix containing his original application to modify child support, all moving and responding papers on Tricia's applications for reimbursement and sole legal custody, the trial court's minute orders regarding the hearings on those three applications, his objections to the court's tentative decision, and his exhibits from the three-day hearing on the applications. He also provided a reporter's transcript of the court's tentative decision. James, however, failed to provide a reporter's transcript from the three-day hearing on the applications, Tricia's exhibits from that hearing, or any documents on his request to modify child support other than his original application.

"Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect

6

of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence. [Citations.]" (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992; *Nielsen*, *supra*, 178 Cal.App.4th at pp. 324-325 [in the absence of a reporter's transcript, "we '"must conclusively presume that the evidence is ample to sustain the [trial court's] findings"' [and o]ur review is limited to determining whether any error 'appears on the face of the record'"].)

Indeed, "'[t]he absence of a record concerning what actually occurred at the trial precludes a determination that the trial court [erred].' [Citation.]" (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 (*Vo*).) "'Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' [Citation.]" (*Foust*, *supra*, 198 Cal.App.4th at p. 187.)

B.      *James Fails to Identify Any Error in the Trial Court's Ruling Granting His Application to Modify Child Support*

The trial court granted James's request to modify child support, reduced his monthly child support payments to approximately $1,000 effective August 1, 2012, and awarded him a $5,832 credit for overpaying his child support obligations for the period between April 1, 2010, and July 31, 2012. James does not challenge any of these rulings, but rather asks that we affirm them and "remand to the trial court with specific instructions to issue an order that can be understood and enforced."

James contends the trial court's order is deficient because it fails to identify a specific, reduced monthly payment for the period between James's application in April 2010 and the court's final ruling in November 2012, and does not provide specific findings explaining the overpayment the court found applied to James's child support obligations for the period between April 1, 2010, and July 31, 2012. According to James, these deficiencies led the Orange County Department of Child Support Services (Child

7

Support Services) to conclude the court only modified his monthly child support obligations on a prospective basis and therefore he still owed a significant amount of child support for the period covering the overpayment. James contends he has had numerous conversations with Child Support Services, but it will not change its records to accurately reflect the court's intended ruling and will continue its efforts to collect phantom arrearages from him.

None of these contentions point to any error in the trial court's ruling that we may correct on appeal. James does not contend the court erred in granting his application, reducing his monthly payments to the amount he requested, and awarding him the overpayment he requested. He also does not contend either he or Tricia fails to understand the court's ruling. Instead, James complains Child Support Services misinterpreted the court's ruling and therefore we should order the court to clarify its ruling. James even asks that we "direct" Child Support Services to correct their records.

We may not consider any of James' complaints about how Child Support Services has construed the trial court's order because there is no evidence in the record to support his claim and all of the events relating to Child Support Services occurred after the court issued its order. (*Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 882 ["Generally, documents and facts that were not presented to the trial court and which are not part of the record on appeal, cannot be considered on appeal. [Citation.] We also disregard statements in the briefs that are based on such improper matter. . . . Generally, appellate courts [also] disregard matters that occur after rendition of an appealed judgment"]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2013) ¶¶ 8:171 to 8:173, p. 8-135, ¶ 8:176, p. 8-136.)

We therefore have no basis to intervene. Based on the trial court's tentative and final rulings and the exhibits it approved in making those rulings, there is no doubt the court awarded James a $5,832 credit because it found he overpaid his child support obligations between April 2010 and July 2012. To clarify any misunderstanding, James

8

first should ask the court to clarify its order.  If the court refuses, then his remedy would be an appeal to this court.

C.      *James Fails to Establish the Trial Court Erred in Ordering Him to Reimburse Tricia for Certain Additional Child Support Expenses*

        1.      General Principles Regarding Additional Child Support Expenses

The Family Code child support formula establishes a basic child support amount based on each parent's income and the parents' timesharing arrangements. (Fam. Code, § 4055.)  The formula, however, does not account for all child care and child rearing expenses.  (Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2013) ¶ 6:285, p. 6-129 (rev # 1, 2012).)  The Family Code therefore authorizes a trial court to require parents to share two additional categories of child support expenses. (Fam. Code, §§ 4061-4063.)

The first category is commonly referred to as mandatory add-ons and it includes two subcategories:  (1) "[c]hild care costs related to employment" and (2) "reasonable uninsured health care costs for the children."  (Fam. Code, § 4062, subd. (a); *In re Marriage of Fini* (1994) 26 Cal.App.4th 1033, 1039 (*Marriage of Fini*).) As the name suggests, the court must award these expenses when they exist.  (*Ibid*.)  The second category is commonly referred to as discretionary add-ons and it too includes two subcategories:  (1) "[c]osts related to the educational or other special needs of the children" and (2) "[t]ravel expenses for visitation."  (Fam. Code, § 4062, subd. (b); *Marriage of Fini*, at p. 1039.)  Consistent with its broad authority to mitigate a decline in the children's standard of living postdissolution, a trial court has broad discretion regarding the type of expenses it may award as discretionary add-ons, including a wide variety of extracurricular activities and educational expenses.  (*In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 760-761 (*Marriage of Schlafly*); Hogoboom & King, Cal.

9

Practice Guide:  Family Law (The Rutter Group 2013) ¶ 6:291.2, pp.  6-131 to 6-132 (rev. # 1, 2008).)

Both categories of add-on expenses are generally apportioned one-half to each parent, but either parent may request a different apportionment based on each parent's income.  (Fam. Code, § 4061.)  A trial court has broad discretion to apportion add-on expenses between the parents as the court finds appropriate.  (*Ibid*.; *Marriage of Fini*, *supra*, 26 Cal.App.4th at pp. 1039-1040.)

Based on a trial court's broad discretion in determining which expenses to award as add-ons and how to apportion those expenses, we review a court's ruling regarding add-on child support expenses under the abuse of discretion standard.  (*Marriage of Schlafly*, *supra*, 149 Cal.App.4th at pp. 760-761; *Marriage of Fini*, *supra*, 26 Cal.App.4th at pp. 1038-1039.

2.      The Record Does Not Reveal Any Error in the Trial Court's Ruling

The trial court ordered James to reimburse Tricia for a variety of mandatory and discretionary add-on child support expenses, including orthodontic care, doctor visits, school lunches and bus transportation, summer camps, and various sports, dance, and other extracurricular activities.  James asserts numerous challenges to the court's decision regarding Tricia's reimbursement request, but each lacks merit.

First, James contends the trial court erred by failing to issue a statement of decision explaining in detail the factual and legal basis for its ruling on every objection James made to Tricia's reimbursement request.  James, however, never properly requested a statement of decision from the court.  During the hearing at which the court announced its tentative decision, James requested that the court rule on each specific objection he previously asserted to Tricia's reimbursement request.  In his written objections to the court's tentative decision, James again asked the court to specifically rule on each of his objections to Tricia's request for reimbursement:  "[James] asks the

10

Court to carefully consider each objection, make a ruling for each objection, state the reason including the appropriate legal standard or existing court order supporting each ruling, and make a specific order for each ruling." This is not a request for a statement of decision, but rather a request for rulings as to specific arguments James made at trial. Moreover, James's request sought much more than a court is required to provide in a statement of decision.

In a nonjury trial, a party may request the trial court issue a statement of decision explaining the factual and legal basis for the court's decision. (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 896.) Any request must identify the particular controverted issues on which the requesting party seeks a statement of decision. (Code Civ. Proc., § 632.) "[A] statement of decision is adequate if it fairly discloses the determinations as to the ultimate facts and material issues in the case. [Citation.] When this rule is applied, the term 'ultimate fact' generally refers to a core fact, such as an essential element of a claim. [Citation.] Ultimate facts are distinguished from evidentiary facts and from legal conclusions. [Citations.]" (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513.)

"[A] trial court is not required to respond point by point to issues posed in a request for a statement of decision." (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500.) Similarly, "[t]he trial court is not required to make an express finding of fact on every factual matter controverted at trial, where the statement of decision sufficiently disposes of all the basic issues in the case." (*Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118; *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 559 ["it is settled that the trial court need not, in a statement of decision, 'address all the legal and factual issues raised by the parties'"].) "'Only where a trial court fails to make findings as to a material issue which would fairly disclose the determination by the trial court would reversible error result.'" (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 67.)

11

Here, the trial court's ruling adequately disposed of the basic issues presented by Tricia's reimbursement request and James's objections because the ruling explained the court reviewed "each and every" expense for which Tricia sought reimbursement, found all of the expenses were "proper child care cost[s]," and found Tricia adequately supported her request for each item through her testimony and exhibits. The court also specifically found the orthodontic expenses were reasonably necessary, the school lunches were an appropriate child care expense, and the summer camp fees were a reasonable alternative to child care, although the camps may have been more expensive. Finally, based on the earlier stipulations regarding James's treatment and child custody issues, the court found Tricia had exclusive decisionmaking authority concerning which add-on expenses to incur for the children's well-being and activities during the period covered by Tricia's reimbursement request.

James next argues the trial court should have denied Tricia's entire reimbursement request because she failed to (1) establish she obtained James's prior written consent to the expenses as the December 2006 judgment required; (2) establish she timely requested James reimburse her for the expenses; and (3) present sufficient documentation supporting each expense. We must reject this challenge because James's failure to provide a reporter's transcript and Tricia's exhibits from the hearing on her reimbursement request requires us to presume the testimony and other evidence presented at that hearing showed Tricia obtained any required consent, timely requested reimbursement, and adequately documented each expense. (*Foust*, *supra*, 198 Cal.App.4th at p. 187 [without a complete record, the appellate court must presume any evidence that could have been presented to support the trial court's ruling was presented]; *Nielsen*, *supra*, 178 Cal.App.4th at pp. 324-325 [absent reporter's transcript appellate court "''"must conclusively presume that the evidence is ample to sustain the [trial court's] findings"''"]; *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992 [same].)

We also reject this challenge because James's failure to provide an adequate record requires us to presume Tricia was not required to obtain James's consent before incurring add-on expenses during the period covered by her reimbursement request. Although the December 2006 judgment required James and Tricia to obtain the other's prior written consent before incurring most add-on expenses, their May 2009 stipulation changed their rights and obligations by temporarily granting Tricia sole legal custody of the children and their May 2010 stipulation expressly reserved sole decisionmaking authority to Tricia concerning the children's medical, dental, educational, psychological and extracurricular activities, even though it otherwise restored joint legal custody. James acknowledges the terms of these stipulations, but contends the parenting coordinator restored his right to participate in decisions regarding the children in December 2010. We must reject that contention because the absence of a complete record requires us to presume the evidence did not support it. (*Foust*, *supra*, 198 Cal.App.4th at p. 187; *Nielsen*, *supra*, 178 Cal.App.4th at pp. 324-325; *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.) Similarly, we must reject James's contention Tricia did not adequately document the expenses for which she sought reimbursement because the trial court expressly found that she did and we presume the evidence supports that finding. (*Ibid.*)

Finally, James challenges specific add-on expenses for which Tricia sought reimbursement and the manner in which the trial court allocated the expenses, but his failure to provide a complete record requires us to presume the evidence presented at the hearing supported the court's ruling. (*Foust*, *supra*, 198 Cal.App.4th at p. 187; *Nielsen*, *supra*, 178 Cal.App.4th at pp. 324-325; *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.) We therefore reject these additional claims, which assert the court erred in (1) finding the children's orthodontic expenses were medically necessary; (2) finding school lunches Tricia purchased for the children were proper child care expenses; (3) failing to credit

13

James for $1,740 he previously paid to Tricia for add-on expenses; and (4) failing to apportion James only 26 percent of the add-on expenses instead of 50 percent.

D.   *James Fails to Establish the Trial Court Erred in Awarding Tricia Sole Legal Custody*

The trial court granted Tricia's request for sole legal custody of the children based on its finding that James and Tricia were unable to work together in making decisions regarding the best interest of their children and that James had failed to satisfy all of the pornography addiction treatment conditions placed on his right to fully participate in decisions affecting his children.  The court explained James and Tricia had attempted a joint decisionmaking process and also a process in which Tricia had exclusive decisionmaking authority for certain decisions, but this arrangement failed to reduce their conflict.  Accordingly, the court concluded granting Tricia sole legal custody, while still allowing James some physical custody, was in the children's best interest.

James contends the trial court erred because Tricia contributed to the problems with the decisionmaking process by failing to obtain his consent and involve him in the process as the December 2006 judgment required.  According to James, granting Tricia sole legal custody rewards her for failing to follow the original judgment. We must reject these contentions because they seek to reargue the evidence, but James failed to provide us a complete record of the evidence presented on Tricia's application to modify child custody.

The "overarching concern" in making child custody determinations is the best interest of the children.  (*Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255.)  Indeed, the trial court has "'the widest discretion to choose a parenting plan that is in the best interest of the children.'"  (*Ibid.*)  We review any child custody order under the deferential abuse of discretion standard.  (*Ibid.*)  Similarly, a trial court's ruling on any

14

application to modify child support is reviewed for abuse of discretion.  (*Ibid*.; *Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 300.)

Here, James's failure to provide the reporter's transcript and Tricia's exhibits from the hearing on Tricia's application to modify child custody prevents us from finding the trial court abused its discretion.  (*Vo*, *supra*, 79 Cal.App.4th at p. 448 ["The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court abused its discretion"].)  Indeed, in the absence of a complete record we must presume the evidence presented supported the court's ruling and findings.  (*Foust*, *supra*, 198 Cal.App.4th at p. 187; *Nielsen*, *supra*, 178 Cal.App.4th at pp. 324-325; *Estate of Fain*, *supra*, 75 Cal.App.4th at p. 992.)

James asserts a number of other conclusory challenges to the trial court's ruling, but fails to provide any authority or reasoned analysis to support those challenges, and therefore we treat them as waived.  (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 ["'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived'"]; *Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 685 ["'"Issues do not have a life of their own:  if they are not raised or supported by argument or citation to authority, we consider the issues waived"'"].)  "We are not bound to develop [James's] arguments for [him]."  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830; see *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

III

DISPOSITION

The order is affirmed.  In the interest of justice, the parties shall bear their own costs on appeal.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.