Filed 3/24/20; Certified for Publication 5/11/20 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| MELANIE ARACE, as Personal Representative, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MEDICO INVESTMENTS, LLC, <br><br> Defendant and Appellant. | E071194 <br><br> (Super.Ct.No. CIVDS1504449) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County. Brian S. McCarville, Judge. Affirmed.

Pope & Gentile and Daniel K. Gentile for Defendant and Appellant.

Law Office of Susan D. Stein, Susan D. Stein; Law Office of Michael G. York and Michael G. York, for Plaintiff and Respondent.

Plaintiff and respondent Melanie Arace, as personal representative and successor in interest for Grace R. Miller (Miller) and trustee of the Grace R. Miller Trust dated May 8, 2002, initiated this action for elder abuse against Medico Investments, LLC (Medico), a residential care facility, and others. Plaintiff alleged that Medico, or its employee

1

Elizabeth Colon (Colon), engaged in multiple acts of elder abuse of Miller. The jury found in favor of plaintiff, who was awarded damages, attorney fees, and costs.

On appeal, Medico contends (1) the trial court erred in denying its motion to continue the trial based on the unavailability of a material witness; (2) the trial court erred in awarding attorney fees and costs; and (3) plaintiff was not entitled to economic damages under her claim for elder abuse (neglect) since the jury declined to award noneconomic damages. We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS[1]

Plaintiff's great-aunt, Miller (born in 1927), was a resident of Foremost Senior Campus (Foremost), a residential care facility for the elderly, from March 31, 2010 to April 1, 2014. Foremost was owned by Leonard Crites, and Colon was an employee of Foremost. In 2010, Crites purchased Miller's home for $66,000 with the promise that she would be "a lifetime resident at Foremost . . . without charge." In May 2012, Medico purchased Foremost in a short sale and retained Colon as the administrator. Medico was not informed about Crites's agreement to provide Miller with free lifetime residency.

In early 2013, after discovering that Miller was living at Foremost rent free, Medico brought this information to Colon's attention. Around the same time, Medico learned that Colon had a durable power of attorney over Miller's property and health care decisions, having obtained it on February 11, 2013. At Colon's request, Medico allowed

---

[1] According to Medico, the "facts are largely undisputed. To the extent there is any dispute regarding the facts, the dispute is not material as this appeal involves only legal issues."

Miller to remain at Foremost and reduced her monthly charge by 50 percent. However, since Colon had power of attorney, Medico sought payment for Miller's past due account. During her stay, Miller was well taken care of by the staff at Foremost. She remained there until March 27, 2014, when Colon moved Miller out of Foremost and into a private home.

By late 2014, plaintiff contacted Miller and discovered that Colon controlled Miller's finances. In February 2015, upon plaintiff's demand, Colon surrendered her power of attorney over Miller and $145,885.90 of Miller's money, which Colon had deposited into her personal bank account in late 2013.

On April 1, 2015, plaintiff initiated this action. In December 2015, Miller passed away. On April 11, 2016, a first amended complaint for damages was filed alleging: (1) fraud/constructive fraud; (2) conversion; (3) fraud; (4) breach of fiduciary duty; (5) intentional infliction of emotional distress; (6) elder abuse; (7) negligence against Medico on the grounds it was liable for Colon's alleged misappropriation of Miller's assets; and (8) negligent supervision.

Plaintiffs' claims were tried before a jury. The special verdict form contained three causes of actions against Medico: financial abuse, neglect, and negligence. The jury found in favor of plaintiff on her claim for financial abuse but assessed no economic or noneconomic damages. The jury also found in favor of plaintiff on her claim for neglect, assessed $39,296.32 in economic damages, $0 in noneconomic damages, and found that Medico acted with recklessness, oppression, or fraud. Finally, the jury found that Medico was negligent, but its negligence was not a substantial factor in causing harm to plaintiff.

3

Judgment was entered for plaintiff, who was awarded $39,296.32 in economic damages, $89,410 in attorney fees, and $20,995.36 in costs.

## II.  DISCUSSION

### A.  *The Trial Court Properly Denied Medico's Motion to Continue Trial.*

Medico argues the trial court abused its discretion in denying the motion for a continuance.  We disagree.

#### 1.  *Further background information.*

On November 13, 2017, the day set for trial to begin, Medico's counsel requested a continuance to mid-December 2017 on the grounds Colon, a material witness, was unavailable due to medical complications.  Plaintiff's counsel opposed the request for the following reasons:  (1) The trial had already been continued two times (from May 22 to July 24, 2017, due to Medico's counsel's engagement in another trial, and from July 24 to Nov. 13, 2017, based upon Medico's counsel's personal health issue); (2) on October 19, 2017, Medico's counsel asked "to again continue trial because he had a 'very important family gathering on Monday, Tuesday and Thursday' of Thanksgiving week," but no mutually agreeable date was available; (3) plaintiff's counsel contacted Colon, who stated she did not "anticipate being cleared to travel before the end of January, 2018"; and (4) Colon's deposition was taken on October 22, 2015, while she was a party to this litigation and represented by counsel, Medico's counsel received notice of the deposition but chose not to attend, and the deposition "adequately covers all aspects" of Colon's expected testimony.  Plaintiff's counsel declared, "I am informed and believe that there is no

4

reasonable probability that [Colon] will ever be able to attend trial and provide testimony."

The request was denied and trial proceeded on November 13, 2017.

      2.     *Applicable legal principles.*

"The decision to grant or deny a continuance is committed to the sound discretion of the trial court. [Citation.] The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.] A reviewing court may not disturb the exercise of discretion by a trial court in the absence of a clear abuse thereof appearing in the record. [Citation.] The burden rests on the complaining party to demonstrate from the record that such an abuse has occurred." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 984-985.)

The trial court's discretion in granting or denying continuances is guided by the California Rules of Court, rule 3.1332. Under rule 3.1332(c), motions for "continuances of trials are disfavored" and may be granted only upon a showing of good cause, which includes the unavailability of an essential lay witness due to illness (rule 3.1332(c)(1)), along with "[a] party's excused inability to obtain essential testimony . . . or other material evidence despite diligent efforts" (rule 3.1332(c)(6)). Other factors to be considered by the trial court include: (1) the proximity to the trial date; (2) whether there was any previous continuance or delay of trial due to any party; (3) the length of the continuance requested; (4) the availability of alternative means to address the problem that gave rise to the motion for a continuance; (5) the prejudice that parties or witnesses

5

will suffer as a result of the continuance; (6) if the case is entitled to preferential trial setting; (7) the trial court's calendar; (8) if trial counsel is engaged in another trial; (9) whether all parties have stipulated to a continuance; (10) whether the interests of justice are best served by a continuance; and (11) any other facts or circumstances relevant to the fair determination of the motion.  (Rule 3.1332(d).)

### 3. *Analysis.*

Here, Medico argues that since it is vicariously liable for its employee's actions, it was substantially prejudiced by Colon's absence because "no one could explain or deny the vast allegations made against her."  Acknowledging its absence at Colon's deposition, Medico explains that "it would not be reasonable (or competent) for Medico's counsel to question its own employee regarding the events which were the subject of the litigation."  For the following reasons, we conclude Medico failed to show good cause for a continuance of trial.

First, Medico's request for a continuance was filed at the 11th hour, the day trial was set to begin.  Second, the record is void of any explanation why Colon's live testimony was essential to Medico's defense.[2]  On appeal, Medico makes a general claim of prejudice because Colon was not present at trial to defend her actions; however, it fails

---

[2] Medico failed to include a reporter's transcript of the November 13, 2017 hearing.  Although it claims that it "did all it could to procure the transcript," we note that Medico has also failed to provide any adequate substitute such as a settled or agreed upon statement of the hearing.  "In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided." (*Foust v. San Jose Construction Co., Inc*. (2011) 198 Cal.App.4th 181, 186-187.)  We, however, will address the merits of Medico's claim.

to identify what exculpatory evidence she could have provided at trial that she had not provided at her deposition, which was taken on October 22, 2015 while she was a named defendant and represented by counsel. Third, Medico failed to attend Colon's deposition. Fourth, Medico takes opposing positions on Colon's testimony. On the one hand, it justifies its absence at her deposition on the grounds "no employer faced with vicarious liability exposure would depose its own employee when" its employee's statements could and would be used against the employer. On the other hand, it asserts that her testimony was so essential to the trial that without her presence Medico "was significantly prejudiced." Fifth, evidence of Colon's actions was introduced via documents, testimony from other witnesses, and Colon's deposition testimony. Finally, since Medico has stated that "this appeal involves only legal issues," we are hard-pressed to comprehend the prejudice Medico has suffered due to Colon's absence. There is no assertion that had the trial been continued to permit Colon to testify, the verdict would have been different. We therefore conclude that the trial court did not abuse its discretion when it denied Medico's request to continue trial.

### B. Plaintiff Is Entitled to Damages and Attorney Fees.

Medico argues plaintiff is not entitled to attorney fees under her claim for financial abuse or damages under her claim for neglect pursuant to the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act). (Welf. & Inst. Code, § 15600 et seq.)[3] As we explain, we disagree.

---

[3] All further statutory references are to the Welfare & Institutions Code unless otherwise stated.

## 1. Applicable legal principles.

The Legislature enacted the Elder Abuse Act "to protect elders by providing enhanced remedies which encourage private, civil enforcement of laws against elder abuse and neglect." (*Negrete v. Fid. & Guar. Life Ins. Co*. (C.D. Cal. 2006) 444 F.Supp.2d 998, 1001.) These remedies include reasonable attorney fees and costs. (§§ 15657, subd. (a), 15657.5, subd. (a).) The Elder Abuse Act defines "abuse" as "[p]hysical abuse, neglect, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering," "deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering," or "[f]inancial abuse, as defined in Section 15610.30." (§ 15610.07, subd. (a).)

Only two types of statutory elder abuse are relevant to this case: financial and neglect. Financial abuse occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud" or "assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud." (§ 15610.30, subd. (a)(1), (a)(2).) When a plaintiff proves "by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to compensatory damages and all other remedies otherwise provided by law, the court *shall award* to the plaintiff reasonable attorney's fees and costs." (§ 15657.5, subd. (a), italics added.)

8

Neglect is defined in section 15610.57, subdivision (a)(1), which in turn includes the negligent failure of an elder custodian "*to assist in* personal hygiene, or in *the provision of* food, clothing, or *shelter*," "*to provide medical care for* physical and *mental health needs*," "to protect from health and safety hazards," or "to prevent malnutrition or dehydration." (§ 15610.57, subd. (b)(1)-(b)(4), italics added.) Thus, the statutory definition of "neglect" speaks not of the undertaking of services, but of *the failure to provide care.* (Cf. *Delaney v. Baker* (1999) 20 Cal.4th 23, 34.) This form of abuse is distinct from financial abuse because in order to recover enhanced remedies, including attorney fees and costs, a plaintiff must prove "by clear and convincing evidence" that the defendant "has been guilty of recklessness, oppression, fraud, or malice in the commission of this abuse." (§ 15657; see § 15610.07, subd. (a).)

### 2. *Analysis.*

#### a. The award of attorney fees and costs for financial abuse was proper.

According to the special verdict form, the jury found Medico or its employee took, hid, appropriated, obtained or retained Miller's property with the intent to defraud or by undue influence, and that this conduct was a substantial factor in causing harm to Miller. The jury did not assess any economic or noneconomic damages. "Whether attorney fees may be awarded is a question of law, which we review de novo." (*Dzwonkowski v. Spinella* (2011) 200 Cal.App.4th 930, 934.)

Medico argues that when a plaintiff recovers no damages "there is no legitimate basis upon which the court should deviate from the fundamental rule which requires that

9

a plaintiff suffer actual damages before it is deemed a prevailing party entitled to recover attorney's fees and costs." We disagree. The attorney fee provision in section 15657.5 is not discretionary in nature. Instead, section 15657.5, subdivision (a), states that "[w]here *it is proven by a preponderance of the evidence that a defendant is liable for financial abuse*, as defined in Section 15610.30, in addition to compensatory damages and all other remedies otherwise provided by law, *the court shall award to the plaintiff reasonable attorney's fees and costs*." (§ 15657.5, subd. (a), italics added.)

Here, the jury found that Medico was liable for the misappropriation of Miller's property, that its conduct was "a substantial factor in causing harm" to Miller, and that plaintiff proved "by clear and convincing evidence that Medico" acted with "recklessness, malice, oppression or fraud." Under the plain language of the statute, an award of attorney fees is a mandatory form of relief regardless of whether the plaintiff is awarded any other form of relief.[4]

---

[4] We reject Medico's attempt to cherry-pick jury instructions in support of its interpretation of the special verdict forms. According to Medico, the "jury was meticulously instructed as to the types of damages which it could award," and that it "must find" that Miller was harmed in order for plaintiff to establish her claim for financial abuse. Given these "clear and unequivocal instructions," Medico argues "the jury spoke very loudly when it found that there was no harm to Miller." Not so. The jury was also instructed that plaintiff was seeking damages from Medico "under more than one legal theory. However, each item of damages may be awarded only once, regardless of the number of legal theories alleged." Given this specific instruction, it is equally arguable that the jury did not believe it could award the $39,296.32 in damages under both the financial abuse and the neglect causes of action. (See, e.g., *OCM Principal Opportunities Fund*, *L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 877-880 [jury's award of $0 in damages was jury's effort to avoid double recovery].)

b. The economic damages award for elder abuse (neglect) was proper.

Relying solely on the language in section 15610.57, Medico contends plaintiff is not entitled to the damages award of $39,296.32 since the jury found Miller did not suffer any physical harm, pain, or mental suffering. We disagree.

Regarding the claim of elder abuse (neglect), plaintiff's counsel argued to the jury that Medico failed to protect Miller by failing to have her assessed as to her ability to handle her own financial needs, and by ratifying Colon's actions instead of reporting her conduct to the applicable authorities.[5] Based on Medico's failure to protect Miller, plaintiff sought $109,201 in economic damages and asked the jury to calculate the amount of noneconomic damages for Miller's "pain, suffering or emotional distress incurred before death." In response, Medico's counsel directed the jury to consult the

---

[5] In particular, counsel argued, "[T]here were multiple opportunities for Medico to protect Grace Miller. If they had done what they should have done. If they had done a preadmission appraisal, they would have seen and had a doctor's report. There would have been no question that this woman has some dementia. She's unable to handle her own financial needs. That's a basic need. We need to go to the Department of Aging. We need to get a responsible person appointed. That was an opportunity to protect Grace Miller from the diversion of her money. [¶] The second opportunity came as soon as they knew there was a power of attorney, shortly in February 2013. They had an opportunity as a mandated reporter to report this. There would therefore be an investigation. There would be an accounting. Elizabeth Colon would be gone, lose her license as an administrator. She'd be gone. The money would never have made it from the unclaimed funds to Elizabeth Colon's house and then in her account."

11

jury instructions regarding damages, arguing any licensing violation arising from Colon's power of attorney over Miller does not "necessarily mean" Miller suffered emotional distress.[6]

The jury was charged with finding, *inter alia*, whether plaintiff had proven Miller was harmed and Medico was a substantial factor in causing her harm. (CACI No. 3103.) Jurors were told that damages "fall into two categories called economic damages and noneconomic damages." Economic damages include "[a]mounts paid for room and board to" Foremost and the "[a]mount of money diverted by Elizabeth Colon for her own use or unaccounted for by Elizabeth Colon." Noneconomic damages include "[p]ast mental suffering, loss of enjoyment of life, inconvenience, anxiety, humiliation, [and] emotional distress." According to the special verdict form for elder abuse (neglect), the jury assessed $39,296.32 in economic damages and $0 in noneconomic damages.

Medico argues that "[b]y its very definition, elder abuse by neglect, under [section 15610.07,] subdivision (a)(1) must be accompanied by a physical manifestation from the alleged neglect." However, neither section 15610.57, which defines neglect, nor the

---

[6] He argued, "If we violated a license, there's no causal connection between a violation of a license regulation and the amount of damages that the plaintiff is asking for. [¶] . . . There's jury instructions on that. . . . [¶] With the power of attorney, okay, you're not supposed to have a power of attorney. A lawyer says you can have a power of attorney. What does that mean? Does one necessarily mean that there's emotional distress and you should award those damages? No, it doesn't mean that at all. Use your common sense. That's what you're here for."

standard jury instruction for neglect (CACI No. 3103),[7] which was given to the jury, require an award of damages for physical harm, pain, or mental suffering. Moreover, Medico never challenged the jury instruction at the trial level, nor does it do so now. Rather, Medico's counsel concurred in the instructions provided to the jury and argued Medico's actions did not warrant noneconomic damages. As such, we conclude the award of economic damages for plaintiff's elder abuse (neglect) claim was proper.

---

[7] CACI No. 3103 provides: "[Name of plaintiff] claims that [he/she/[name of decedent]] was neglected by [[name of individual defendant]/ [and] [name of employer defendant]] in violation of the Elder Abuse and Dependent Adult Civil Protection Act. To establish this claim, [name of plaintiff] must prove all of the following: [¶] 1. That [[name of individual defendant]/[name of employer defendant]'s employee] had a substantial caretaking or custodial relationship with [name of plaintiff/decedent], involving ongoing responsibility for [his/her] basic needs, which an able-bodied and fully competent adult would ordinarily be capable of managing without assistance; [¶] 2. That [name of plaintiff/decedent] was [65 years of age or older/a dependent adult] while [he/she] was in [[name of individual defendant]'s/[name of employer defendant]'s employee's] care or custody; [¶] 3. That [[name of individual defendant]/[name of employer defendant]'s employee] failed to use the degree of care that a reasonable person in the same situation would have used in providing for [name of plaintiff/decedent]'s basic needs, including [insert one or more of the following:] [¶] [assisting in personal hygiene or in the provision of food, clothing, or shelter;] [¶] [providing medical care for physical and mental health needs;] [¶] [protecting [name of plaintiff/decedent] from health and safety hazards;] [¶] [preventing malnutrition or dehydration;] [¶] [insert other grounds for neglect;] [¶] 4. That [name of plaintiff/decedent] was harmed; and [¶] 5. That [[name of individual defendant]'s/[name of employer defendant]'s employee's] conduct was a substantial factor in causing [name of plaintiff/decedent]'s harm." (Boldface and italics omitted.)

## III.  DISPOSITION

The judgment is affirmed.  Respondent is awarded costs on appeal.


McKINSTER
Acting P. J.

We concur:


FIELDS
J.


RAPHAEL
J.


14

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

<u>ORDER</u>

| | |
|---|---|
| MELANIE ARACE, as Personal Representative, etc.,<br>      Plaintiff and Respondent,<br>v.<br>MEDICO INVESTMENTS, LLC,<br>      Defendant and Appellant. | E071194<br><br>(Super.Ct.No. CIVDS1504449) |

The court has reviewed requests filed (1) April 29, 2020, by Senior Advocacy Services, (2) April 30, 2020, by California Long-Term Care Ombudsman Association, (3) April 30, 2020, by Galanti & Copenhaver, Inc., (4) May 8, 2020, by California Advocates for Nursing Home Reform, (5) May 8, 2020, by the Institute on Aging, and (6) Legal Assistance for Seniors, to partially publish the nonpublished opinion filed in the above matter March 24, 2020.

Under California Rules of Court, rule 8.1120(a)(3), the requests are untimely. However, the time to file is extended 30 days pursuant to the Emergency Order under rule 8.66, and we therefore have jurisdiction to decide on the publication requests. Accordingly, we are granting the requests because the opinion: (1) invokes a previously overlooked rule of law or reaffirms a principle of law not applied in a recently reported decision; (2) advances a new interpretation of a statute; and (3) involves a legal issue of continuing public interest. (Cal. Rules of Court, rule 8.1105(c)(2), (c)(4), (c)(6).)

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II(A) and II(B)(2)(b).

1

IT IS SO ORDERED that said opinion be certified for partial publication pursuant to California Rules of Court, rule 8.1105(b).

McKINSTER
Acting P. J.

We concur:


FIELDS
        J.


RAPHAEL
        J.