Filed 10/22/15  In re Marriage of Schwartz and Scholnick CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of CINDY Y. SCHWARTZ and LAWRENCE JAMES SCHOLNICK | H040607 (Santa Cruz County Super. Ct. No. FL035095) |
| CINDY Y. SCHWARTZ, Appellant, v. LAWRENCE JAMES SCHOLNICK, Respondent. | |

Petitioner Cindy Y. Schwartz appeals from a final judgment dissolving her marriage to respondent Lawrence James Scholnick.  On appeal, Schwartz contends the trial court erred in ordering her to pay Scholnick $38,138 as an equalizing payment in the division of the community property.  As set forth below, Schwartz has failed to provide an adequate record, and we therefore must affirm.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Given the limited appellate record, we derive our account of the factual and procedural history of the case predominantly from the trial court's final statement of decision.

A.    *Petition*, *trial*, *tentative statement of decision and objections*

Schwartz petitioned for dissolution of marriage on October 30, 2012 and the matter proceeded to trial on "the parties' claims regarding equalization of funds from the

refinance and sale of their home and their respective IRA accounts, and claims for reimbursements" on November 18, 2013. After the trial court issued a tentative statement of decision in which it found that Scholnick owed Schwartz an equalizing payment of $10,619, Scholnick objected to the trial court's calculation of various credits and debits.[1] The trial court agreed that Scholnick's objection was meritorious and found that Schwartz owed Scholnick an equalizing payment of $38,138.

Schwartz's counsel filed an objection to the tentative statement of decision claiming the trial court erred in "attributing child and spousal support obligations to [Scholnick] as a part of the equitable division process." The trial court overruled the objection on the ground that "[Scholnick] clearly intended some part of the funds held by [Schwartz] to be used for support of herself and their child," and thus it determined "what would have been a fair amount to use for these purposes."

Schwartz, on her own behalf, also filed an objection. Her objection attached a number of documents--none of which had been proffered, let alone admitted, at trial--including tax returns, some of Scholnick's W-2s, a 2002 statement and a 2013 letter from Fidelity, an e-mail from Scholnick to herself and a "spreadsheet of house expenses." The trial court overruled her objection because it "rests entirely on either alleged evidence outside of the record of the trial, or represents disputes with the Court's factual findings after considering the evidence that was introduced."

B.      *Facts set forth in the final statement of decision*

Schwartz and Scholnick married in May 1985 and separated in November 2002. During their marriage, they had one child, Theo, in August 1990.

---

[1] Schwartz did not request that Scholnick's objection to the tentative statement of decision be included in the record on appeal so we do not know how the trial court supposedly miscalculated the various credits and debits.

2

### 1. *The family home*

Schwartz and Scholnick purchased a home in 1986 for $243,000.  Scholnick testified he paid $42,000 toward that purchase out of his separate property, and Schwartz did not dispute his testimony.

Scholnick moved out of the family home when he and Schwartz separated in November 2002.  In 2003, the parties refinanced the residence for approximately $300,000 to pay off their credit card debt and consolidate three mortgages on the property.  This refinance did not generate excess proceeds accruing to either party.

In 2005, Scholnick and Schwartz again refinanced the residence, and this time about $200,000 in proceeds was generated.  Of this amount, Scholnick asked for and received $35,500, and Schwartz received the balance of $164,500.  From that Schwartz used $20,000 for repairs and $36,000 to replace the roof to make the home "saleable."

The home was sold in August 2007, resulting in a net gain of approximately $330,575 after paying off the existing mortgage, closing costs and commissions.  Of these proceeds, Scholnick received $50,000 and Schwartz received the remaining $280,575.

### 2. *Allocation of community expenses and claims for reimbursement*

Schwartz, who continued living in the family home with their son, paid the mortgage, property tax and other expenses related to the residence.  The trial court found it difficult to calculate the mortgage payments based on the testimony and evidence provided.  It estimated that, from the date of separation to the date the property was sold, the "mortgage payments, taxes and insurance paid were at least $121,800."

Schwartz requested, and the trial court granted, reimbursement for $8,428 (one-half of $16,856) in income taxes she paid on behalf of the community during the separation.  The trial court also found that Scholnick was entitled to reimbursement of $1,200 for Schwartz's cell phone expenses and $14,250 for medical insurance premiums that he paid for her benefit after separation.

### 3. *Retirement accounts*

Scholnick and Schwartz testified about four IRA accounts they owned when they separated in 2002. Schwartz had funds in a Vanguard account, which the court found was her separate property, and $102,442 in a Fidelity account. Scholnick had $185,744 in his Morgan Stanley account. The trial court ruled each party was entitled to a credit of $51,221 in Schwartz's Fidelity account and a credit of $92,872 in Scholnick's Morgan Stanley account.

### 4. *Relevant employment and salary history*

Scholnick was employed at the date of separation, but lost his job shortly thereafter. Thereafter, his employment was sporadic. In order to calculate imputed support, the trial court took an average of Scholnick's income from his Social Security statements for the years 2002 through 2009. He was only minimally employed in 2010 and 2011.

Schwartz was employed before and early in the marriage, but did not work much in the prior six years. For imputing support, the court "imputed full time income to [Schwartz] at an averaged minimum wage of $8 hour [*sic*] ($1,389 per month)."

### 5. *The parties' expectations and intentions relating to support*

Upon moving out of the family home in 2002, Scholnick wrote Schwartz a letter in which he said he intended to pay her $1,800 per month in support. He never did so, and no other agreement was ever reached regarding financial issues. Scholnick did sporadically pay her $800 per month "during the next year." The trial court said the testimony on how much was paid in total was not clear and it assumed Scholnick made a total of 12 payments of $800 to Schwartz.

At trial, Schwartz testified it was her understanding that she was to have the majority of the proceeds from the refinance and sale of the residence in lieu of Scholnick paying support. Her position was that she should be permitted to retain those proceeds

4

without offset, as voluntary payments in lieu of support, and that the court should award her one-half of Scholnick's IRA accounts.

Scholnick testified to the contrary: he never agreed Schwartz could keep the proceeds of either the second refinance or the sale of the home in lieu of support.

The trial court found that Scholnick intended the proceeds from the refinance and sale of the home to provide for the needs of Schwartz and their son. Using the program, Dissomaster, the court determined Scholnick would have owed child support totaling $39,340 from 2002 until Theo's 18th birthday, and spousal support totaling $9,380. The trial court concluded, "[c]ombining all of the foregoing, there is presently due $38,138 from [Schwartz] to [Scholnick]. Payment of this sum will result in equalization of all of their accounts and liquidation of all of the claims between the parties."

Acting in propia persona, Schwartz filed another document, also entitled petitioner's objection to statement of decision. The trial court deemed this objection to be a motion for reconsideration under Code of Civil Procedure section 1008, which it denied as untimely and because it did not raise "new or different statements of fact, circumstances or a change in the law." The trial court issued a final statement of decision on December 3, 2013.

### C. Record on appeal

Schwartz designated the following materials as the record on appeal: (1) the reporter's transcript from the trial on equalization; (2) the tentative statement of decision; (3) Schwartz's objection to tentative statement of decision (filed by her counsel); (4) Schwartz's objection to tentative statement of decision (filed by herself); (5) final statement of decision; (6) Schwartz's objection to statement of decision; (7) order denying Schwartz's motion for reconsideration; (8) judgment; (9) notice of entry of

5

judgment; (10) notice of appeal; and (11) Schwartz's notice designating the record on appeal. Schwartz did not designate any trial exhibits to be included in the record.[2]

D.     *Schwartz's appellate motion to "obtain actuary's findings"*

After briefing was completed in this case, Schwartz filed a "motion to obtain actuary's findings," seeking to have this court "order the IRAs Actuary's Findings." According to her motion, "[The actuary's] findings are part of the unspoken court record. The IRAs were entered into the court record as part of the Trial Transcript, furthermore as part of the Petitioner's Objections to Statement of Decision. This Actuary was preformed [*sic*] to rectify The Final Statement of Decision IRAs valued as of November 1st 2002, the date of separation as opposed to their current values (FAM § 2550.5)." Attached to the motion are two exhibits: (1) A November 16, 2013 letter from Fidelity Investments to Schwartz along with a November 2002 investment report for a Fidelity IRA in Schwartz's name (hereafter Fidelity IRA documents); and (2) an August 31, 2002 investment report for two Morgan Stanley IRAs in Scholnick's name and a August 31, 2013 Morgan Stanley "client statement" summarizing the value of a retirement account in Scholnick's name (hereafter Morgan Stanley IRA documents).

We have found no statutory or legal authority to issue an order to "obtain actuary's findings." Presumably Schwartz is seeking to augment the record on appeal to include the exhibits attached to her motion, and we will treat her motion as such.

A document can be augmented to the appellate record only if the item was filed or lodged in the superior court in the case on appeal. (Cal. Rules of Court, rule 8.155(a)(1).) "Augmentation does not function to supplement the record with materials not before the trial court." (*Vons Companies*, *Inc*. *v*. *Seabest Foods*, *Inc*. (1996) 14 Cal.4th 434, 444, fn. 3.)

---

[2] Schwartz did not introduce any exhibits at trial. According to the reporter's transcript, Scholnick had a "booklet" of exhibits admitted into evidence.

The Fidelity IRA documents are already part of the record on appeal. They were originally attached as exhibits to her December 3, 2013 objection to the trial court's tentative decision and Schwartz included that objection and its accompanying exhibits in her record designation.

We have no way of knowing if the Morgan Stanley IRA documents were ever submitted to the trial court, because Schwartz did not designate any of Scholnick's trial exhibits as part of the record on appeal. The parties may have discussed Scholnick's Morgan Stanley accounts during his testimony, but the mere fact that a party testified about the contents of certain documents does not mean those documents are automatically incorporated into the record on appeal. If these documents were admitted into evidence by the trial court, and if they were important to Schwartz's case, they should have been included in her designation.

The motion to augment the record on appeal is denied.

## II.    DISCUSSION

On appeal, Schwartz argues the trial court: (1) improperly valued the IRAs; (2) used "unrealistic[ally]" low estimates of house expenses; (3) applied "improper income" in carrying out its support calculation; and (4) was "inconsisten[t]" in its distribution of community property. She accordingly requests that we reverse the judgment and remand the matter for an equal division of the community property, one in which Scholnick is required to pay her some unspecified amount. Schwartz has failed, however, to provide this court with copies of all the documents entered into evidence at the trial.

"Once the court determines the assets and liabilities of the community estate, it must value them and make an equal division of the estate." (*In re Marriage of Finby* (2013) 222 Cal.App.4th 977, 984.) The trial court "possesses broad discretion to determine the manner in which community property is awarded in order to accomplish an equal allocation." (*In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 880.) "If the

7

circumstances warrant, the court may award one or more items of the property to one party and require that party to make an equalizing payment to the other." (*Ibid.*)

"A fundamental rule of appellate review is that ' "[a] judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Guardianship of K.S.* (2009) 177 Cal.App.4th 1525, 1529.) " ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." ' " (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) " 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Ibid.*)

Furthermore, Schwartz's attempt to have this court review evidence not considered below is improper. After the parties submitted the matter to the trial court and after the trial court issued its tentative statement of decision, Schwartz objected and belatedly proffered a number of documents to support her contentions that the court's calculations were erroneous. The trial court declined to consider this evidence, and Schwartz does not directly challenge the trial court's decision in this matter, instead apparently arguing that this court should review it. It is well-settled that documents and facts that were not presented to, or considered by, the trial court cannot be considered on appeal. (*Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.)

Schwartz has failed to provide this court an adequate record. None of the documents entered into evidence at the trial are included in the appellate record. Without access to the documents entered into evidence, it is impossible for us to determine whether the trial court equally divided the community property. We also have not been provided with a copy of Scholnick's objection to the tentative statement of decision, which the trial court relied on in recalculating the equalization payment set forth in the

8

final statement of decision. Contrary to Schwartz's assertion, Scholnick's testimony does not provide an adequate basis for this court to review her claim--Scholnick did not testify regarding the value of every community asset described in the documents missing from the appellate record. Accordingly, because Schwartz has failed to provide this court an adequate record, the judgment must be affirmed.

## III. DISPOSITION

The judgment is affirmed.

_____

Walsh, J.[*]

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.

Marriage of Schwartz/Scholnick
H040607

_____

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.