Filed 11/4/15  Mangine v. Ball CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARIE MANGINE, | B257377 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC468719) |
| v. | |
| DON BALL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Reversed with directions.

Marie Mangine, in pro. per., for Plaintiff and Appellant.

Craig Mordoh for Defendants and Respondents.

_____

## INTRODUCTION

Marie Mangine filed a first amended complaint against her landlords for failing to maintain her rental unit in compliance with applicable building, housing and health codes and for harassment, both in violation of the West Hollywood Municipal Code (WHMC).[1] The trial court sustained the landlords' demurrer without leave to amend as to Mangine's cause of action for failure to maintain her rental unit. Her harassment claim proceeded to trial and the court found for the landlords.

Mangine appeals from the judgment arguing the trial court erred when it (1) sustained the landlords' demurrer to her cause of action for failure to maintain her rental unit; (2) granted the landlords' two motions for mandatory relief from default based on attorney neglect (Code Civ. Proc., § 473, subd. (b)); (3) failed to make a reasonable compensatory award for legal fees and costs when it granted one of the motions for relief from default; and (4) denied her motion for leave to file a second amended complaint.

We agree the trial court erred in sustaining the demurrer without leave to amend and reverse with directions to enter an order overruling the demurrer.

## FACTUAL AND PROCEDURAL BACKGROUND

The central issue in this appeal is the court's order sustaining the demurrer without leave to amend. Therefore, we set forth the relevant allegations of the operative complaint and assume the truth of all properly pleaded facts and reasonable inferences drawn from those facts as we are required to do. (*Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 133, fn. 5.)

---

[1] All undesignated section references are to the West Hollywood Municipal Code until otherwise indicated.

Mangine lives in one of 11 units located at 8575-8577½ Holloway Drive in West Hollywood, and her tenancy is governed by title 17 of the WHMC (Rent Stabilization Ordinance). (§ 17.04.010.) The property is owned by defendants Don Ball, Ilene Ball, the Don Ball and Ilene Ball Trust, Steve Binder, Sharon Binder, the Steve Binder and Sharon Binder Trust and Michael Ball.[2] Don Ball managed and leased the property until March 2011 when his son Michael Ball took over the responsibilities.

In May 2007, when the onsite managers showed Mangine an available unit, they promised the "brownish/blackish stain on the ceiling in the bathroom shower that appeared to be the result of water intrusion would be investigated and repaired before [Mangine] moved in." Two weeks later, Mangine signed a month-to-month rental agreement and gave Don Ball her check for $2,615 to cover her first month's rent, a security deposit and a cleaning fee. At that time, Don Ball assured Mangine the stain on the bathroom shower ceiling would be repaired before she moved in. On a final walk through prior to Mangine's occupancy, the unit was freshly painted and the stain was no longer visible, but the defendants had done nothing more than conceal the habitability issue and, in doing so, deceitfully induced Mangine to enter into the rental agreement.

In September 2007, about three months after Mangine moved into the unit, she noticed the stain reappearing on the bathroom ceiling. She spoke with the onsite managers about the stain as well as unsanitary conditions in the hallways. They said the stain was "just surface mold" that could be repaired by cleaning and made it clear they did not get paid to maintain hallways in a clean and sanitary manner.

From September 2007 through October 2010, Mangine had conversations with Don Ball about the habitability and maintenance issues at the property. Don Ball's

_____

2      According to the first amended complaint, Don Ball acted as the trustee for both the Don Ball and Ilene Ball Trust and the Steve Binder and Sharon Binder Trust. (It appears the correct spelling of the latter defendants' last name is "Binder" and not "Bender" as identified in Mangine's pleadings.) Don Ball died during proceedings in the trial court, and Ilene Ball was substituted in his place. (Code Civ. Proc., § 377.41 [continuation of pending action against decedent].)

3

position was always that the building was "too old to perform proper/regular maintenance and repairs." Throughout this time, despite defendants' failure to remedy the defects at the property, Mangine diligently and consistently paid her rent on time.

In October 2010, Mangine and Don Ball came to an agreement concerning the long-term unabated habitability issues involving Mangine's unit; Ball agreed no rent would be due until the habitability issues were abated. When Mangine told Ball she would send him a letter memorializing the conversation, he became upset because "he said it was insulting that [she] did not trust him to honor his agreement and it just was not the way he did business."

About six months later, on March 24, 2011, Michael Ball called Mangine, informing her Don Ball had relinquished oversight of the building and all further communications concerning the property should be directed to him or the onsite managers. He also called to ask why Don Ball's bookkeeper had no record of her rent payments after September 2010. She told Michael Ball of her agreement with Don Ball that no rent would be due until all the habitability issues were abated. She and Michael Ball discussed these issues at length, and at no time did he take exception to the existence of the agreement she had with Don Ball.

The next day, however, Michael Ball wrote a letter characterizing his conversation with Mangine in a very different manner. He demanded retroactive rent payments by April 15, 2011 and timely rental payments thereafter. Michael Ball did not address any plan to abate the habitability issues they had discussed during the conversation.

On April 21, Mangine received a three-day notice to pay rent or quit from Michael Ball. The following week, Don Ball filed an unlawful detainer action against Mangine, seeking past due rent at a daily rate of $43.35 per day, plus damages and attorney's fees and forfeiture of the rental agreement.

On August 9, after a two-day bench trial in the unlawful detainer (UD) action, the court found there was an agreement between Don Ball and Mangine providing the landlord would demand no rent until the habitability issues were abated. The court found Don Ball had not sought rent from Mangine during an extended period of time before

4

filing the UD action, and Michael Ball's correspondence substantially acknowledged the existence of the agreement between Mangine and Don Ball. Therefore, with respect to the time period at issue in the UD action, the court concluded the prior agreement applied to the time before April 1, 2011, such that Mangine owed no rent for this time.[3] According to the judgment, Don Ball's testimony was "totally lacking in credibility" and the court credited Mangine's testimony "fully."[4]

The court in the UD action also found Mangine had presented credible evidence of substantial defects at the property (known to Don Ball and not caused by Mangine), including eight items referenced in a Los Angeles County Housing Department "Official Inspection Report" dated April 26, 2011. According to this report, the percentage of defect identified for "[m]old ('microbial growth') in the bathroom" was 20 percent, and the percentage of defect for "[d]amaged/[d]irty/unsanitary hallways [and] common areas" was 30 percent. Because Don Ball had substantially breached the implied warranty of habitability, Mangine's rent of $1,300.64 per month was reduced by 50 percent for the months in question to the reasonable rental value of $650.32 per month for the period of April 1, 2011 through July 31, 2011 (for a total of $2,601.28) plus rent from August 1 through the date of the August 9 judgment at a rate of $21.68 per day (another $195.12).

Based on the foregoing facts, Mangine alleged in her operative complaint that defendants had failed to maintain her rental unit in accordance with all applicable building, housing and health codes, in violation of section 17.56.010(a)(3).[5] Despite knowledge of these severe defects, defendants demanded and accepted rent payments the

---

[3] It is not clear from the record the date from which Don Ball sought to recover unpaid rent.

[4] Mangine asserted in her operative complaint that the judgment constituted evidence in support of her claim defendants had failed to maintain her apartment in the manner required by the Rent Stabilization Ordinance.

[5] "All rental units, at a minimum, shall be: . . . [¶] . . . [¶] . . . Maintained in accordance with all applicable building, housing and health codes." (§ 17.56.010(a)(3).)

5

entire time Mangine was forced to live in these conditions from June 2007 to the present.[6]

Mangine alleged section 17.68.010(d) provides that any violation of the Rent Stabilization Ordinance shall render the violator liable to the party who incurred damages as a result of the violation in "a civil action" for the actual damages suffered by the aggrieved party as well as punitive damages. Further, Mangine noted the retention of amounts received in violation of the Rent Stabilization Ordinance shall be deemed a continuing violation until such amounts are refunded to the affected persons. As such, she alleged, she was entitled to a refund of the portion of the rent attributable to the substandard conditions of the rental property from June 2007 to October 2011—the entire time defendants did not maintain the property in the manner required by section 17.56.010—plus punitive damages and attorney's fees, pursuant to section 17.68.010(d).

Defendants demurred, arguing the trial court had sustained their demurrer to Mangine's original complaint on the ground "an adjustment in rent under the WHMC must be applied for through the Rent Stabilization [Department]. Here, there is no allegation that [Mangine] ever did so." Noting the first cause of action of Mangine's first amended complaint was substantially the same as in her original complaint, the trial court then sustained the demurrer without leave to amend.[7]

Mangine appeals from the judgment subsequently entered in favor of the defendants.

---

[6]    It appears Mangine no longer lives at the property; after she filed her original complaint on September 1, 2011, the defendants returned her October rent payment, indicating they would no longer accept payment from her because she had filed this action. On October 28, Don Ball filed a second UD action against Mangine.

[7]    The trial court overruled defendants' demurrer to a new cause of action for harassment, and the parties proceeded to trial on this claim alone. (Defendants' demurrer to a third cause of action for violation of Business and Professions Code section 17200 (mislabeled as the fifth cause of action) was also sustained without leave to amend.) Only the first cause of action is at issue in this appeal.

## DISCUSSION

### A. *Mangine Stated a Cause of Action under the Rent Stabilization Ordinance*

#### 1. *Standard of Review*

A demurrer tests the sufficiency of a complaint as a matter of law. Therefore, the standard of review on appeal is de novo. (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034.) On appeal from a judgment after a demurrer is sustained without leave to amend, we assume the truth of all facts properly pleaded as well as facts which may be judicially noticed, but we do not assume the truth of contentions, deductions or conclusions of fact or law. (*Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759, 764; *Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 745.) Regardless of the label attached to a particular claim, we must examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory, and if the facts alleged demonstrate entitlement to relief under any possible legal theory, reversal is required. (*Black*, *supra*, at p. 745.)

#### 2. *Sections 17.56.010(a)(3) and 17.68.010*

The requirements imposed on a landlord by section 17.56.010(a)(3) of the Rent Stabilization Ordinance are straightforward: "All rental units, at a minimum, shall be: . . . [¶] . . . [¶] . . . Maintained in accordance with all applicable building, housing and health codes." (§ 17.56.010(a)(3).)

Remedies for violations of the Rent Stabilization Ordinance are contained in section 17.68.010. Subdivision (d) of that section provides: "*Any* person . . . may enforce the provisions of this title by means of a civil action. Any person . . . violating any of the provisions of this title is liable for each and every such offense for actual damages suffered by the aggrieved party, or for statutory damages in the sum of one thousand dollars . . . whichever is greater, and for punitive damages. The prevailing party may also recover such attorneys' fees and costs as may be determined by the court."

7

(Italics added.)  Thus, a tenant damaged by any violation of the Rent Stabilization Ordinance may file a civil action to recover her damages.

Mangine alleged facts to state a claim under this section.  She alleged in her operative complaint that she rented a unit in the City of West Hollywood in June 2007 that was subject to the Rent Stabilization Ordinance.  From 2007 through October 2011, there were defects and habitability issues with the unit.  Mangine's unit had mold.  The common areas of the building were dirty and unsanitary.  In the UD action, the court found substantial defects in the property and noted a county housing department report dated April 26, 2011 revealing eight substantial defects with the unit including mold and unsanitary hallways.  Mangine alleged that her unit had not been maintained in a habitable condition in violation of section 17.56.010(a)(3).  She also alleged she incurred damages because she agreed to pay an amount of rent based on her belief she was renting a habitable unit and she did not obtain such a unit.  Accordingly, Mangine alleged she was entitled "to a refund of the portion of the rent attributable to the substandard conditions of the rental property . . . ."

Mangine was not required to allege anything further.  Her allegations established a violation of the Rent Stabilization Ordinance, damages and an entitlement to bring a civil action.


3. *Mangine Did Not Forfeit The Issue*
Defendants assert Mangine has forfeited any right to appeal the court's ruling on the demurrer because she has failed to provide an adequate record on appeal.  Defendants claim Mangine's failure to include defendants' demurrer to Mangine's initial complaint, her opposition to it as well as the court's prior ruling provides us with an inadequate record for meaningful review.  We disagree.

Defendants are correct that an appellant has the burden of providing us with an adequate record; if the record is inadequate for meaningful review, the trial court's decision should be affirmed.  (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.)  Here, however, the record includes Mangine's original

8

complaint, and as noted by the court, the first cause of action in the amended complaint was "substantially the same as the original complaint." In its ruling on the demurrer to the first amended complaint, "The Court found that [WHMC] section 17.56.010(d) provides for enforcement by first applying for an adjustment in rent under the [WHMC] through the Rent Stabilization [Department]. [Mangine] is required to allege she did so, *as was indicated at the time of sustention of the demurrer to the original complaint.* [Mangine] has once again failed to allege that she ever did so. As [Mangine] cannot so allege, the demurrer to the first cause of action is sustained without leave to amend." (Italics added.)

The record in this case leaves no doubt defendants' demurrer to Mangine's initial complaint was premised on the ground Mangine was required to apply to the Rent Stabilization Department for a rent adjustment but failed to allege she had done so, and the trial court sustained both demurrers on this ground; there is no suggestion there was any *other* ground to support the trial court's decision. (See *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1384 ["[w]hen the record clearly demonstrates what the trial court did, we will not presume it did something different"].) The record is adequate for meaningful review (*Foust v. San Jose Construction Co., Inc.*, *supra*, 198 Cal.App.4th at p. 187), and we address the issue on its merits.

4. *Mangine was not required to allege she had applied to the Rent Stabilization Department to state her cause of action.*

On the merits, defendants contend "the remedy" for the landlord's failure to provide necessary maintenance is for the tenant to "make application to the Rent Stabilization Department pursuant to [s]ection 17.44.040" for a rent adjustment. (§ 17.46.010(d).) They argue because Mangine never alleged she had made such an application, the trial court properly sustained the demurrer. Defendants assert "[t]he power to adjust the rent pursuant to the [WHMC] resides within the power of the Rent Stabilization [Department] and its Hearing Examiners, not with the courts."

9

Defendants rely on section 17.56.010(d) to support their position that Mangine's sole remedy was a rent adjustment. Section 17.56.010(d) provides: "The requirements of subsections (a)(1) [minimum standards painting], (a)(2) [minimum standards window coverings and carpet], (a)(4) [minimum standards vinyl flooring] and (a)(5) [minimum standards wallpaper] and subsection (c) [minimum standards common area window coverings, carpet and painting] of this section must be performed upon the written request of the tenant(s) to the landlord. The landlord is responsible for all acts reasonably necessary to the performance of maintenance required by this section . . . . The tenant(s) may make application to the Rent Stabilization Department pursuant to [s]ection 17.44.040, in the event a landlord fails or refuses to comply with the written request."

Mangine, however, is not seeking a rent adjustment. The prayer of Mangine's complaint makes that clear. She is seeking actual and punitive damages as well as attorney's fees pursuant to section 17.68.010(d). Based on *any* violation of the Rent Stabilization Ordinance, section 17.68.010(d) allows Mangine to seek "actual damages," "or . . . statutory damages in the sum of one thousand dollars ($1,000.00), whichever is greater, and . . . punitive damages."

Defendants' argument suffers from two additional flaws. First, Mangine is not attempting to enforce section 17.56.010(a)(1), (a)(2), (a)(4) or (a)(5). Mangine expressly alleged a violation of the Rent Stabilization Ordinance under section 17.56.010(a)(3), maintenance of a unit "in accordance with all applicable building, housing and health codes." Section 17.56.010(d) is inapplicable to a tenant's claim under subdivision (a)(3) of section 17.56.010; it specifically excludes section 17.56.010(a)(3).

Second, even assuming section 17.56.010(d) did apply to Mangine's claim, the section permits, but does not require, a tenant to make an application for a rent adjustment. The section is permissive and provides that a tenant "may make application to the Rent Stabilization Department pursuant to [s]ection 17.44.040, in the event a landlord fails or refuses to comply with the [tenant's] written request [to perform required maintenance]." (§ 17.56.010(d).) Moreover, section 17.44.040, which governs the procedure for a tenant-requested rent adjustment, states: "The remedies here are

10

cumulative and do not preclude any other remedy that may be available under any provision of law." (§ 17.44.040(1)(c).)

Contrary to defendants' argument, section 17.68.010—entitled "Remedies – Violations "—provides a tenant with multiple avenues for relief for violations of the Rent Stabilization Ordinance. The section specifies: "The remedies provided herein are *cumulative and shall not be deemed to preclude any other remedy which may be available under any provision of law*." (§ 17.68.010(l), italics added; see also *Sego v. Santa Monica Rent Control Bd.* (1997) 57 Cal.App.4th 250, 259 [although one provision of the Santa Monica Rent Control Charter Amendment "provides for a tenant initiated administrative complaint," another "allows the tenant to bring a civil action for damages plus a penalty of treble the amount of excess rent, with no requirement that the tenant exhaust administrative remedies"].)

As Mangine stated a cause of action in her first amended complaint under sections 17.56.010(a)(3) and 17.68.010(d) and her remedies were not limited to requesting a rent adjustment through the Rent Stabilization Department, the court erred in sustaining defendants' demurrer.

**B.** ***The Trial Court Did Not Err in Granting the Motions for Relief from Default***[8]

1. *Governing Law and Standard of Review*

Section 473, subdivision (b), authorizes a court "upon any terms as may be just" to "relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against [the party] through his or her mistake, inadvertence, surprise, or excusable neglect." The section provides for both discretionary and mandatory relief.[9] Under the discretionary

---

[8]     Statutory references in the remaining discussion are to the Code of Civil Procedure.

[9]     Section 473, subdivision (b), provides: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy

11

relief provision, a court may allow relief based upon the court's evaluation of the nature of the mistake, inadvertence, surprise or excusable neglect alleged and the justification proffered for the conduct that occurred. In contrast, under the mandatory relief provision, upon a showing by an attorney declaration of "mistake, inadvertence, surprise, or neglect," a court "shall" vacate any resulting default, default judgment or dismissal entered. (§ 473, subd. (b); *Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612 ["if the prerequisites for the application of the mandatory provision of [§] 473, [subd.] (b) exist, the trial court does not have discretion to refuse relief"].)

Where the applicability of the mandatory relief provision of section 473, subdivision (b), does not turn on disputed facts and presents a pure question of law, it is subject to our de novo review. (*Leader v. Health Industries of America, Inc.*, *supra,* 89 Cal.App.4th at p. 612.) "Where the facts are in dispute as to whether or not the prerequisites of the mandatory relief provision of [the section] have been met, we review the record to determine whether substantial evidence supports the trial court's findings. [Citation.]" (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 399.)

---

of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken. . . . No affidavit or declaration of merits shall be required of the moving party. Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties. . . ."

12

2. *The Binder Defendants' Motion for Relief from Default*

Mangine filed a request for entry of default against Steve Binder and Sharon Binder on November 3, 2011.  The court entered their defaults as requested on that date.

On January 10, 2012, the Binder defendants filed a motion to set aside the default, supported by the declaration of their attorney, Craig Mordoh.  According to the attorney's sworn declaration, after receiving Mangine's complaint from Michael Ball in early October 2011, Mordoh planned to file a demurrer.  Due to his own negligence, he miscalendared the filing deadline as to the Binder defendants who had been served before the other defendants.  Mordoh declared:  "The failure to file the demurrer timely was entirely mine and my clients should not be denied their day in court . . . ."

Mangine opposed the motion.  Mangine challenged Mordoh's credibility and argued his actions were an intentional tactical decision.

On February 2, 2012, the trial court granted the Binder defendants' motion to set aside the default.  The court found Mordoh's declaration and the moving papers described "a straightforward failure to properly calendar the due date for demurrer" which "constitutes an adequate showing of attorney neglect[] resulting in the entry of default" while the opposition presented "no basis to challenge the honesty of [Mordoh's] declaration . . . ."


3. *Mangine has failed to demonstrate error in the trial court's order*
   *granting the Binder defendants' motion for relief from default.*

Mangine argues the trial court erred in granting the Binder defendants' motion for relief for two reasons:  (1) The trial court lacked jurisdiction or acted in excess of its jurisdiction to hear the motion because the Binder defendants failed to comply with the statute's mandatory requirement that a proposed pleading be filed with the motion; and (2) the Binders failed to present sufficient admissible evidence the default was actually caused by attorney error.  We disagree with both arguments.

First, section 473, subdivision (b), does require that a request for relief "shall be accompanied by a copy of the answer or other pleading proposed to be filed therein . . . ."

13

However, the "'objectives of the "accompanied by" requirement, i.e., a screening determination that the relief is not sought simply to delay the proceedings, are satisfied by the filing of a proposed [pleading] at any time before the hearing.' [Citation.]" (*Hu v. Fang*, *supra*, 104 Cal.App.4th at p. 65; *County of Stanislaus v. Johnson* (1996) 43 Cal.App.4th 832, 838 ["[a] party substantially complies with the 'accompanied by' requirement by filing the proposed [responsive pleading] sufficiently in advance of the hearing to permit the other party to prepare for the hearing"].)

In their motion, the Binder defendants requested the court "allow them to respond to the Complaint by filing the same demurrer filed by the other Defendants on November 23, 2011." Thus, the Binder defendants satisfied the "'accompanied by' requirement" by referencing the specific pleading that they intended to file. (*Hu v. Fang*, *supra*, 104 Cal.App.4th at p. 65.)

With regard to Mangine's second argument, she is correct that the trial court may deny relief if it finds "the default . . . was *not in fact* caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473, subd. (b), italics added; *Milton v. Perceptual Development Corp.* (1997) 53 Cal.App.4th 861, 866-867 ["The clause in [§] 473, [subd.] (b) which mandates the court to grant relief unless it finds that the default was not in fact caused by lawyer error is not only a credibility testing device. It is also 'a causation testing device.'"]) Here, however, the trial court found Mordoh's sworn declaration credible. The court credited the evidence indicating Mordoh was representing the Binder defendants at the time the demurrer should have been filed, but he missed the filing deadline and bore sole responsibility for missing the deadline. Consequently, the trial court's causation and credibility determinations are supported by substantial evidence. (*Milton*, *supra*, at p. 867 ["A trial court's finding on the causation issue will be affirmed so long as it is supported by substantial evidence. [Citation.] If the evidence gives rise to conflicting inferences, one of which supports the trial court's findings, we must affirm. [Citation.]"]; *Carmel, Ltd. v. Tavoussi*, *supra*, 175 Cal.App.4th at p. 399.)

14

4. *Defendants' Motion for Relief from Default*

Mangine filed her first amended complaint on February 21, 2012. On March 29, she submitted a request for entry of default as to all defendants. While the court clerk initially rejected the request, the court ultimately entered defaults against defendants as of March 29.[10]

On April 2, defendants filed a demurrer to Mangine's first amended complaint. The court set the demurrer for hearing on June 1.

On May 18, Mangine filed opposition to the demurrer. She argued the demurrer should be stricken because it had been filed four days after entry of default.

On May 24, defendants filed a motion to set aside default. (§ 473, subd. (b).) Defendants' counsel, Mordoh, filed a sworn declaration with the motion explaining the failure to timely file the demurrer was his fault.

According to Mordoh's declaration, he had been negligent in failing to file the demurrer by March 24 because he had been engaged in discussions with Mangine's counsel in the UD action, John Leonard, attempting to settle both the UD matter and the civil action. Mordoh stated that when settlement discussions broke down, he allowed his preparations for trial in the UD action to distract him from filing the demurrer in the civil action until April 2. Mordoh revealed that prior to Mangine requesting the entry of default, she did not contact him to indicate the responsive pleading should be filed or she intended to take defendants' default. After Mordoh learned default had been entered, he asked Mangine to agree to set it aside and "offered to compensate her for any time lost by this request," but Mangine refused to consider the matter.

---

[10] The details are not relevant to the issues raised in this appeal, but it appears that the court clerk's perception that there were deficiencies in Mangine's request for entry of default delayed entry of default and apparently permitted defendants' demurrer to be filed and placed on the trial court's calendar.

15

Mangine filed opposition to the motion through Leonard.  Again Mangine challenged Mordoh's credibility.[11]

Leonard appeared on behalf of Mangine at the hearing.  The court granted defendants' motion, finding an adequate showing of attorney neglect resulting in entry of default.  The court also declined Mangine's request for an award of sanctions.

Mangine contends the trial court erred in granting defendants' motion to set aside default.  We disagree.

As before, Mangine argues the court lacked jurisdiction to grant the motion because it was not accompanied by a proposed pleading as required by statute.  Again, the demurrer was in the court files and the court simply ordered it recalendared.  Here, the objectives of the statute were satisfied.  Mangine has failed to demonstrate error because defendants satisfied the statute's "'accompanied by' requirement." (*Hu v. Fang*, *supra*, 104 Cal.App.4th at p. 65.)

Next, Mangine argues defendant Don Ball, as an individual and as a trustee, "lost the capacity and standing to seek relief" from default.  She contends the court no longer had jurisdiction to hear a motion on his behalf as a result of his death on March 8, 2012.  Her argument is unpersuasive.

Don Ball died on March 8 before his answer was due on or about March 24.  Generally, "judgment cannot be rendered for or against a decedent" until the decedent's personal representative is substituted into the action.  (*Sacks v. FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 957.)  This rule is applied "to prevent prejudice to the parties because of lack of notice, lack of proper representation, or some other disadvantage."

---

[11]  Three days before the date set for hearing on the motion to set aside default, Leonard (Mangine's attorney in the UD action—and the attorney who signed the declaration of mailing in support of Mangine's request for entry of default) filed a supplemental declaration, stating "the Defendant [*sic*, Mangine] ha[d] incurred [or would] incur reasonable attorney fees of $2,625.00" based on a rate of $250 per hour for preparation of opposition and appearance at defendants' ex parte application (3 hours and 2.5 hours, respectively) and preparation of opposition and appearance at defendants' motion to vacate default (2 hours and 3 hours, respectively).

(*Ibid.*) Here, the court's entry of Don Ball's default on March 29 after his death was subject to set aside because the default was prejudicial to his estate and taken before his personal representative substituted into the action. (See *id*. at pp. 957-959; see also § 377.41.)[12]

Mangine alternatively argues that if the court properly granted the motion, the court erred in declining to award "sanctions"—referring to her attorney's fees as documented in Leonard's supplemental declaration. She contends the fee award is mandatory.

In response, defendants argue, without citation to the record, the supplemental declaration from Leonard was filed late without the court's permission; Leonard was not Mangine's attorney of record as she was self-represented; there was no evidence before the court as to the existence of any "reasonable compensatory legal fees and costs"; and the court implicitly found the requested fees were not reasonable. (§ 473, subd. (b).)

We agree with the court that Mangine is not entitled to "reasonable compensatory legal fees and costs" under these circumstances. (§ 473, subd. (b).) Mangine is not entitled to an award for her unsuccessful opposition to the motion to set aside the default. The statute requires an award of "compensatory legal fees and costs" to reimburse a party for the unnecessary expense incurred in obtaining a default which the court later sets aside because of attorney fault. (See *Matera v. McLeod* (2006) 145 Cal.App.4th 44, 68 [recovery of fees "necessitated by [attorney's] neglect"].) As Mangine was not represented by counsel when she obtained the default and there was no evidence of any costs she incurred in obtaining the default, she is not entitled to any award under section 473, subdivision (b).

---

[12]     Ilene Ball substituted into the action for Don Ball prior to the hearing on defendants' demurrer to Mangine's first amended complaint.

17

**C. *Mangine has failed to demonstrate error in the trial court's denial of her motion for leave to amend her complaint.***

Motions for leave to amend are directed to the sound discretion of the trial court, and the court's discretion will usually be exercised liberally to permit amendment of the pleadings. (§ 473, subd. (a)(1) ["[t]he court may . . . in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading"]; *Howard v. County of San Diego* (2010) 184 Cal.App.4th 1422, 1428.) Notwithstanding the liberal policy in favor of amendments, the trial court's exercise of its discretion will not be disturbed on appeal unless it clearly has been abused. (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230.)

As we noted, an appellant bears the burden of providing an adequate record on an issue; "a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown." (*Foust v. San Jose Construction Co., Inc.*, *supra*, 198 Cal.App.4th at p. 187.) "'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented."' [Citation.] This general principle of appellate practice is an aspect of the constitutional doctrine of reversible error. [Citation.] "'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed."' [Citation.]" (*Ibid.*)

Prior to trial on her harassment cause of action, on September 19, 2013, Mangine filed a motion to enforce a purported settlement agreement between her and defendants or, in the alternative, for leave to file an amended complaint, adding a cause of action for breach of settlement agreement.[13] On October 9, Mangine filed a notice indicating she

---

[13] According to the civil case summary, Mangine filed a notice of settlement on June 20, 2013, but this document is not included in the record on appeal. It appears trial was originally scheduled for June 24, 2013.

18

had received no opposition to her motion. After issuing a tentative ruling and hearing argument, the trial court denied Mangine's motion. Mangine did not include the court's tentative ruling in the record on appeal.[14]

Contrary to Mangine's representation, the record indicates defendants filed opposition to Mangine's motion, yet she failed to include that opposition in the record on appeal and the hearing was unreported.[15] Because the trial court's order is presumed correct and Mangine has failed to present an adequate record for meaningful review, the order denying leave to amend must be affirmed. (*Foust v. San Jose Construction Co., Inc.*, *supra*, 198 Cal.App.4th at p. 187.)

We express no opinion as to whether Mangine should be permitted to amend her complaint to allege breach of contract and breach of the covenant of good faith and fair dealing on remand.

---

[14] Mangine revealed during oral argument that she could not secure the tentative ruling which she indicated was in her favor.

[15] The civil case summary demonstrates defendants filed an opposition to the motion on October 9, the same date Mangine filed her notice of no opposition. Defendants were not required to augment the record on appeal with their opposition and they did not do so. Therefore, we cannot determine on this record what arguments they made in opposition to the motion. On appeal, defendants argue the amendment was sought "on the eve of trial" and was based on events unrelated to her original claims.

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate the order sustaining the demurrer to the first cause of action of the first amended complaint without leave to amend and to enter an order overruling the demurrer to the first cause of action of Mangine's first amended complaint.  Mangine is to recover her costs on appeal.

BECKLOFF, J.[*]

We concur:

PERLUSS, P. J.

SEGAL, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.