Filed 8/1/25  Chi v. Ford Motor Company CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| CRAIG CHI,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>FORD MOTOR COMPANY,<br><br>    Defendant and Respondent. | G063072<br><br>(Super. Ct. No. 30-2020-01134105)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sheila Recio, Judge. Affirmed.

Law Offices of Jim O. Whitworth and Jim O. Whitworth for Plaintiff and Appellant.

Shook Hardy & Bacon, M. Kevin Underhill, Andrew Chang, and Amy Alexander for Defendant and Respondent.

Craig Chi sued Ford Motor Company for violations of the Song-Beverly Consumer Warranty Act, popularly known as the "lemon law" (Civ. Code,[1] § 1790 et seq.). The trial court awarded Chi $39,608.68 in damages but no civil penalties.

Chi argues the trial court erred by denying him a trial by jury and by not awarding civil penalties. We disagree; Chi has not shown the court abused its discretion in denying him relief from his waiver of his right to a jury trial, and substantial evidence supports the court's finding that Ford did not willfully violate the Song-Beverly Act so as to warrant civil penalties. As for Chi's remaining challenges, his failure to provide a reporter's transcript precludes him from establishing any evidentiary error, and he has forfeited his various other arguments by not adequately briefing those issues. We therefore affirm the judgment.[2]

FACTS[3]

In September 2019, Chi bought a new Ford F-150 truck from a Ford dealer. The vehicle came with Ford's standard warranties.

The total cash price for the truck was $51,129.61 after sales tax and fees, a $995 surface protection plan, and a $3,695 service contract. Chi

---

[1] All further undesignated statutory references are to this code.

[2] In its briefing and at oral argument, Ford asked this court to dismiss Chi's appeal in light of his various rule violations and alleged attempts at gamesmanship. We deny this request and reach the merits of Chi's arguments to the extent possible.

[3] Chi's appellate brief improperly references facts not in the record and fails to consistently provide citations to the record by volume and page number. (See Cal. Rules of Court, rule 8.204(a)(1)(C).) We do not consider any unsupported factual assertions in his brief.

put $5,000 down, received a manufacturer's rebate of $7,750, and financed $39,087.36. Less than a month later, he paid off the truck in full for $39,298.68.

In December, Chi brought the truck to the dealer because it was consuming too much oil. The dealer attempted without success to fix the problem. The following month, Chi called Ford directly to report the issue was not resolved. Ford recommended returning to the dealer for further repairs but said Chi could contact Ford to request a buyback.

Chi contacted Ford on February 24, 2020 to request a buyback, and Ford began the review process that same day. Later that evening, without waiting for Ford's response, Chi filed a Song-Beverly Act complaint against Ford for breach of express and implied warranties, alleging Ford had willfully failed to replace the vehicle.

Two weeks later, Ford offered Chi a statutory repurchase of the vehicle, plus $2,500 in attorney fees. Later that week, Ford advised the amount due under the statute was $44,007.40. Chi rejected the offer and kept the truck.

The trial court issued a minute order in November 2020 directing any party seeking a jury trial to post jury fees, or the matter would proceed as a court trial. Chi did not post jury fees.

When the matter was called for trial in March 2023, Chi insisted he was entitled to a trial by jury. The trial court found he had waived his right to a jury trial by not timely posting jury fees, set the matter for a court trial in May, and permitted Chi to file a brief on the waiver issue.

Chi posted jury fees the next day and filed a motion for relief under Code of Civil Procedure section 473. The motion largely complained about Ford's litigation tactics and asserted in passing that unspecified court

3

orders for "COVID extensions" eliminated the deadline to post jury fees. Neither the motion nor the accompanying attorney declaration identified any mistake, inadvertence, surprise, or excusable neglect by Chi or his counsel.

Ford opposed the motion, asserting a change at this late stage would be unduly prejudicial because it had already prepared for a court trial. Ford explained that granting relief would require it "to draft jury instructions, propose voir dire questions, prepare exhibits for use before a jury, and revise its motions in limine for use at a jury trial." Chi did not file a reply. The trial court denied Chi's motion for relief, noting it had ordered the parties to post jury fees in 2020, and Chi had failed to do so.

The matter proceeded as a court trial. Since Ford admitted its breach of warranty and acknowledged its obligation to repurchase the vehicle, the primary issue, at least according to Ford, was whether Ford willfully failed to promptly repurchase or replace Chi's vehicle.

Chi was the only witness to testify during his case-in-chief, and he offered no exhibits. Ford called two witnesses during its case-in-chief. As there is no reporter's transcript in the record, it is unclear what the three witnesses said. After Ford rested, Chi requested a statement of decision, which the trial court took under advisement.

A week later, the trial court entered a minute order detailing its findings and rulings. It first found Chi had waived his right to a statement of decision because the court trial was concluded in less than eight hours and because Chi failed to make the request before the matter was deemed submitted. (See Code Civ. Proc., § 632.)

The trial court then awarded Chi $39,608.68 in damages for what it found was the "actual price" Chi paid for the vehicle—the $39,298.86 financing pay off, plus the $5,000 deposit, less the non-manufacturer items

4

(i.e., the $995 surface protection plan and the $3,695 service contract). (See §
1793.2, subd. (d)(2)(B).) The court found Chi was not entitled to civil penalties
because any violation of the Song-Beverly Act was not willful (see § 1794,
subd. (c)), and because Ford maintained a qualified third-party dispute
resolution process (see *id.*, subd. (e)(2)).

The trial court ordered Ford to prepare and submit a proposed
judgment. However, Chi prepared and submitted his own proposed judgment,
which omitted the civil penalty finding in Ford's favor and did not require
Chi to return the truck to Ford. Chi did not serve the proposed judgment on
Ford, so Ford did not object. The court did not notice the omissions, signed
the judgment Chi submitted, and provided notice to all parties.

After learning about the judgment, Ford notified Chi it would be
seeking ex parte relief to modify or correct the judgment. Before Ford could
do so, Chi filed a notice of appeal, but he did not serve it on Ford or otherwise
mention the appeal in his opposition to Ford's ex parte application.

Unaware of the pending appeal, the trial court heard and granted
Ford's ex parte application, acknowledging it had not noticed the omissions in
Chi's proposed judgment. When the court later became aware of Chi's appeal,
it helpfully issued a minute order clarifying the record.

DISCUSSION

I.

THE TRIAL COURT DID NOT ERR IN DENYING CHI RELIEF

FROM HIS WAIVER OF HIS RIGHT TO TRIAL BY JURY

Chi first contends the trial court erred in denying his motion for
relief from his waiver of his right to a jury trial. We see no abuse of
discretion.

5

There is no question Chi waived his right to a jury trial. In November 2020, the trial court reminded the parties that jury fees must "be posted in accordance with the Code of Civil Procedure or the matter will proceed as a [c]ourt [t]rial." The code required the posting of jury fees by February 23, 2021, 365 days after Chi filed his complaint. (See Code Civ. Proc., § 631, subd. (c)(2) [if no case management conference is scheduled in a civil action, jury fees are due 365 days from the filing of initial complaint].) Chi did not post jury fees by that date, thereby waiving his right to a trial by jury. (*Id.*, subd. (f)(5).)

But "[w]aiver in the manner prescribed by section 631 is not necessarily the end of the line." (*TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 778 (*TriCoast*).) Subdivision (g) of the statute allows a trial court to set a jury trial even after such a waiver "in its discretion upon just terms." (Code Civ. Proc., § 631, subd. (g).) In exercising that discretion, a court may consider a variety of factors, including "whether granting relief from waiver would result in any hardship to other parties or to the court, such as delay in rescheduling the trial for a jury or inconvenience to witnesses[;] . . . the timeliness of the request; whether the requester is willing to comply with applicable requirements for payment of jury fees; and the reasons supporting the request." (*TriCoast,* at pp. 779–780.)

As best we can tell, Chi never disputed Ford's claims of prejudice from changing to a jury trial at the eleventh hour.[4] Chi did not seek relief from his waiver until the case was called for trial, more than two years after

---

[4] Although Chi now claims Ford is "hard-pressed to claim prejudice" because "Ford demanded [a] Jury" and "prepared for a Jury trial," the record does not support these assertions.

the waiver occurred. And even then, Chi made no attempt to show his failure to post fees after the trial court reminded him to do so was somehow inadvertent. The court acted well within its discretion by denying Chi relief from his waiver.

Chi insists the trial court should have granted Chi's motion for relief under Code of Civil Procedure section 473. But Chi's motion failed to identify any "mistake, inadvertence, surprise, or excusable neglect" by Chi or his counsel. (See *id.*, subd. (b).) Chi instead largely complained about Ford's litigation tactics. Again, we see no abuse of discretion.

## II.

### SUBSTANTIAL EVIDENCE SUPPORTS THE LACK OF CIVIL PENALTIES

Chi next contends the trial court erred in refusing to award civil penalties, which Chi contends were mandatory because Ford admitted liability. We are not persuaded.

Under section 1794, if a buyer establishes a manufacturer's failure to comply with the Song-Beverly Act "was willful, the judgment may include . . . a civil penalty which shall not exceed two times the amount of actual damages." (§ 1794, subd. (c).) Not all violations of the Song-Beverly Act are willful, however. (See *Kirzhner v. Mercedes-Benz USA, LLC* (2020) 9 Cal.5th 966, 984 (*Kirzhner*) [comparing remedies available for willful and nonwillful violations].) We review a trial court's finding on whether a violation was willful for substantial evidence. (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1104.)

Ample evidence supports the trial court's finding that Ford did not willfully violate the Song-Beverly Act. Ford's business records show that Chi contacted Ford on the afternoon of February 24, 2020 to request a buyback, and Ford began the review process that same day. On March 9, just

7

two weeks later, Ford offered Chi a statutory repurchase of the vehicle plus $2,500 in attorney fees. On March 11, Ford clarified that the statutory repurchase amount would be $44,007.40—about $4,400 more than Chi would eventually recover after three years of litigation.

Given Ford's prompt review and the fact it made its statutory repurchase offer just two weeks after Chi requested a buyback, we see no evidence of willful noncompliance. (See *Dominguez v. American Suzuki Motor Corp.* (2008) 160 Cal.App.4th 53, 59–60 [no willful noncompliance where manufacturer accepted plaintiff's buyback demand within six weeks].)

III.

CHI HAS NOT SHOWN ENTITLEMENT TO INCIDENTAL DAMAGES

Chi next asserts the trial court erred in failing to award damages for "incidentals." He fails to show any error.

When determining the amount of restitution to be paid by the manufacturer of a new motor vehicle that does not conform to warranty, the amount must include "incidental damages to which the buyer is entitled under Section 1794, including, but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." (§ 1793.2, subd. (d)(2)(B); see *Kirzhner, supra,* 9 Cal.5th at p. 977 [registration renewal and nonoperation fees may be recoverable incidental damages].)

Chi appears to contend he is entitled to incidental damages like insurance premiums, rental car charges, DMV registration fees, replacement car expenses, and "the cost of cover." At no point in his 52 pages of briefing, however, does Chi specify the amounts incurred for any of those alleged incidentals, direct us to the page in the record showing he in fact incurred those incidentals, or explain why any such charges were incidental to Ford's conduct. "It is not our function to scour the record and make [the appellant's]

8

arguments for him." (*Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 969.)

## IV.

## REMAINING ISSUES

We cannot consider Chi's remaining arguments in light of his failure to provide an adequate record or adequate briefing.

For example, he asserts the trial court erred by permitting Ford's witnesses to testify on topics about which they had no personal knowledge, and by accepting "evidence" from Ford's defense counsel about Chi's damages during closing argument. However, Chi did not provide us with a reporter's transcript from trial, and it is impossible to tell from the limited record what the witnesses and attorneys said. (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 ["'Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant]'"].)

Similarly, although Chi's opening brief identifies nearly a dozen "issues presented for review" (capitalization omitted), he fails to address or meaningfully argue any of those issues in the remainder of his brief.[5] An opening brief must "[s]tate each point under a separate heading or subheading . . . and support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).) To demonstrate reversible error, an appellant must supply the reviewing court

---

[5] Those issues include: whether the trial court should have struck Ford's answer once Ford admitted liability; whether the court improperly considered settlement offers in making its ruling; whether the court erred in refusing to issue a statement of decision; whether Ford's offer made after the complaint was filed is a defense to Chi's claims; and whether the court erred in allowing a Ford witness to testify remotely while requiring Chi to testify in person.

with a cogent argument supported by legal analysis and record citations. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.) Since Chi failed to do so here, we consider those issues forfeited.

DISPOSITION

The judgment is affirmed. Ford shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).) On remand, the trial court "may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment" so it conforms to the court's June 7, 2023 ruling. (Code Civ. Proc., § 473, subd. (d).)

SCOTT, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

DELANEY, J.